UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

BURT LAKE BAND OF
OTTAWA AND CHIPPEWA INDIANS,

        Plaintiff,

    v.

RYAN ZINKE,
*In His Official Capacity as
Secretary of the Department
of the Interior, et al.,*

        Defendants.

Civil Action No. 17-0038 (ABJ)

## **MEMORANDUM OPINION**

Plaintiff Burt Lake Band of Ottawa and Chippewa Indians (formerly known as the Cheboygan Band) describes itself as "the last 'landless' tribe in Michigan." Am. Compl. [Dkt. # 11] ¶ 11. This case arises out of the fact that plaintiff has been seeking formal federal recognition, which would give the Burt Lake Band (or "the Band") a number of rights and benefits, since at least 1935. Plaintiff has brought this action against Ryan Zinke, in his official capacity as Secretary of the Interior; John Tahsuda III in his official capacity as the Acting Assistant Secretary for Indian Affairs for the Department of the Interior;[1] and the United States Department of Interior ("DOI"), alleging violations of the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, the Due Process Clause and the Equal Protection Clause of the Fifth Amendment of the United States Constitution, and the Federally Recognized Indian Tribe List Act, 25 U.S.C § 5130 *et seq.*,

---

1    Plaintiff originally named former Acting Assistant Secretary for Indian Affairs Michael S. Black as defendant. Pursuant to Federal Rule of Civil Procedure 25(d), the Court automatically substitutes his successor as defendant.

in connection with two events: the agency's failure to issue a decision on a petition for recognition that was filed in 1935, and the agency's 2015 promulgation of regulations which preclude the Band from re-petitioning the agency for recognition under 25 C.F.R. § 83. The defendants have moved to dismiss all of the claims, and for the reasons that follow, the Court will grant the motion in part and deny it in part: the Court will dismiss Counts II and III because they are barred by the statute of limitations; it will deny the motion to dismiss Counts IV, V, and VI because plaintiff does have standing to bring them; and it will dismiss Count VII for failure to state a claim on which relief can be granted. Plaintiff has withdrawn Count I.[2]

## BACKGROUND

The complaint sets out a rather remarkable and undisputed history of inaction. In 1935, a group of the Band's ancestors petitioned the Bureau of Indian Affairs ("BIA") within the Department of Interior to be recognized under the Indian Reorganization Act of 1934. Am. Compl. ¶ 13. The agency has never issued a final decision on the 1935 Petition. *Id.* ¶¶ 74–85. In 1985, the Band filed another petition. *Id.* ¶ 99. The 1985 petition went unanswered for more than 20 years, until it was denied in 2006. *Id.* ¶ 107. Plaintiff did not seek review of the 2006 decision.

In 2014, the Bureau of Indian Affairs initiated a rulemaking to reform the federal recognition process, and it solicited comments on a proposed rule that would revise the existing regulations. Fed. Acknowledgment of Am. Indian Tribes, 79 Fed. Reg. 30766 (proposed May 29, 2014) (to be codified at 25 C.F.R. pt. 83) ("Proposed Rule"). One of the provisions in the proposal

---

2   Plaintiff withdrew Count I because the APA does not apply retroactively. Opp. to Defs.' Mot. to Dismiss [Dkt. # 14] ("Pl.'s Opp.") at 3; *see* Administrative Procedure Act, ch. 324, 60 Stat. 237 (1946) (codified as amended 5 U.S.C. §§ 551–52) ("no procedural requirement shall be mandatory as to any agency proceeding initiated prior to the effective date of such requirement"). Accordingly, the Court will dismiss Count I.

sent out for notice and comment, would have allowed Tribes to re-petition the agency for recognition under certain circumstances. *Id.* Ultimately, the agency chose not to adopt that provision, stating that "allowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review," and identifying other efficiency concerns. Fed. Acknowledgment of Am. Indian Tribes, 80 Fed. Reg. 37862, 37875 (July 1, 2015) (to be codified at 25 C.F.R. pt 83) ("2015 Regulations").

Plaintiff filed this lawsuit on January 9, 2017, Compl. [Dkt. # 1], and filed an amended complaint on June 1, 2107. Am. Compl. The amended complaint includes seven constitutional and statutory claims. Counts I, II, and III challenge the agency's failure to issue a final decision on the 1935 Petition under the APA, the Due Process Clause, and the Equal Protection Clause of the 5th Amendment. Counts IV, V, and VI challenge the agency's 2015 Regulations under the APA, the Due Process Clause, and the Equal Protection Clause. The final count, Count VII, invokes the Federally Recognized Indian Tribe List Act and demands that the Court order the Secretary to place the Band on the List. Based on these claims, plaintiff seeks the following relief:

1) An order directing the agency "to adjudicate the 1935 IRA Petition;"

2) A declaration that the 2015 Regulations are "unlawful, unconstitutional, and unenforceable;"

3) An order directing the agency to "consider and adjudicate a supplemental petition from the Band for recognition;"

4) An order directing the agency to place plaintiff on the "Federally Recognized Indian Tribe List;" and

5) Other "relief as the Court deems just, proper, and equitable."

Am. Compl. "Prayer for Relief" ¶¶ 1–5.

Defendants moved to dismiss Counts I–III on statute of limitation grounds, Counts IV–VI for lack of standing, and Count VII for failure to state a claim upon which relief can be granted. Defs.' Mot. to Dismiss [Dkt. # 13]; Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss [Dkt. # 13] (collectively, "Defs.' Mot.") at 2. Plaintiff withdrew Count I, agreeing that the APA does not apply retroactively, but it has otherwise opposed the motion. Pl.'s Opp. to Defs.' Mot. [Dkt. # 14] ("Pl.'s Opp.") at 3. Defendants filed a reply. Reply Brief in Supp. of Defs.' Mot. [Dkt. # 15].

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (citations omitted). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

### A. Subject Matter Jurisdiction under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction

is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

**B.     Failure to State a Claim under Rule 12(b)(6)**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,'

5

but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiffs favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiffs' legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

A. **The Court lacks subject matter jurisdiction over Counts II and III.**

In Counts II and III, plaintiff alleges that it was injured by defendants' failure to issue a formal denial of the 1935 Petition for recognition. Am. Compl. ¶¶ 170, 173. It contends that this is a violation of its constitutional rights under the Due Process Clause and the Equal Protection Clause of the Fifth Amendment. *Id.* ¶¶ 169−75.

Defendants move to dismiss these counts for lack of subject matter jurisdiction under Rule 12(b)(1) on the grounds that the claims are barred by the statute of limitations. Defs.' Mot. at 13–17. They invoke 28 U.S.C. § 2401(a), which provides that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 U.S.C. § 2401(a); Defs.' Mot. at 15.

Section 2401, entitled "Time for Commencing action against United States," contains two paragraphs. Subsection (a) prescribes the six year statute of limitations for all civil actions against the United States, and subsection (b) sets out a notice provision that applies to tort claims. *See* 28 U.S.C. § 2401(a)–(b). The D.C. Circuit has held that "unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Spannaus v. DOJ*, 824 F.2d 52, 55 (D.C. Cir. 1987). The Court has also made it clear that section 2401(a) applies to constitutional claims. *See Neighbors of Casino San Pablo v. Salazar*, 442 Fed. Appx. 579, 580 (D.C. Cir. 2011) (applying section 2401(a) to constitutional claims); *see also Impro Prods., Inc. v. Block*, 722 F.2d 845, 851 n. 12 (D.C. Cir. 1983) ("[I]f plaintiffs indeed assert a colorable constitutional claim, the District Court must determine whether it satisfies the six-year statute of limitations for civil actions against the United States. 28 U.S.C. § 2401(a).").

Plaintiff contends that the Court "should no longer" consider section 2401(a) to be a jurisdictional condition because the Supreme Court recently held in *United States v. Kwai Fun Wong*, that subsection 2401(b) is not jurisdictional. Pl.'s Opp. at 10–11, citing 135 S. Ct. 1625, 1627–28 (2015) (ruling that time limitations under section 2401(b) are non-jurisdictional and subject to equitable tolling because the "Court will not conclude that a time bar is jurisdictional unless Congress provides a 'clear statement' to that effect" and "Congress did no such thing in

7

enacting § 2401(b)"). Plaintiff's argument has considerable force. But neither the Supreme Court nor the Court of Appeals has yet applied the reasoning of *Kwai Fun Wong* to section 2401(a). Since *Spannaus* remains the law of this circuit, this Court is bound by it. *See Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 130 n. 21 (D.D.C. 2017) ("The Court follows the explicit holding of the D.C. Circuit that section 2401(a) creates a jurisdictional condition attached to the government's waiver of sovereign immunity.") (internal citations omitted); *Shinogee v. Fanning*, 234 F. Supp. 3d 39, 42 (D.D.C. 2017) (following *Spannaus*); *Chacoty v. Tillerson*, No. 14−764, 2018 WL 443493 at *7 (D.D.C. Jan. 16, 2018) (same).

According to defendants, the six-year statute of limitations imposed by 28 U.S.C. § 2401(a) expired long ago. The Court agrees. Plaintiff maintains that the statute of limitations would not have started to run until the agency officially denied its petition. Pl.'s Opp. at 5. But "a cause of action accrues when the injured party discovers – or in the exercise of due diligence should have discovered – that it has been injured." *Sprint Commc'ns Co. v. FCC*, 76 F.3d 1221, 1228 (D.C. Cir. 1996). Here, plaintiff describes the injury as the BIA's "non-decision" or its "failure to inform the Band" that there would be no formal decision on the 1935 Petition. Am. Compl. ¶¶ 17, 73, 170, 173. It is hard to put one's finger on the exact date when plaintiff should have been aware that the agency had taken no action on its 1935 Petition – 1938? 1941? 1945? – but there is no question that we crossed that bridge more than six years ago.

By plaintiff's own account, it discovered its injury in the 1980s. The complaint notes that plaintiff obtained "internal correspondence" of DOI officials in the 1980s when it was in the process of preparing another petition. Am. Compl. ¶ 85. This internal correspondence revealed that "[t]he BIA made an informal, internal decision that was treated as a conclusive resolution of the Band's rights within the DOI for all practical purposes." *Id.* ¶ 69. According to plaintiff, the

8

"internal decision" to deny the Band recognition was based on limited funds rather than the Tribe's legal eligibility. *Id.* ¶ 76. So at the very latest, plaintiff was on notice of its claim at some point in the 1980s.

Plaintiff argues though, that equitable tolling should be applied in its case because it faced "extraordinary" circumstances due to the agency's failure to respond to the 1935 Petition. Pl.'s Opp. at 12–14. Because the Court finds that section 2401(a) is applicable and jurisdictional, and that the six-year period has lapsed, it is stripped of its subject matter jurisdiction and cannot apply the equitable tolling doctrine. *See Spannaus*, 824 F.2d at 55; *see also Horvath v. Dodaro*, 160 F. Supp. 3d 32, 43 (D.D.C. 2015), citing *Bigwood v. Def. Intelligence Agency*, 770 F. Supp. 2d 315, 319 (D.D.C. 2011) ("Because [section 2401(a)] is jurisdictional, neither waiver nor equitable tolling is applicable.").

Plaintiff also contends that equitable estoppel prevents defendants from raising the statute of limitations defense. Pl.'s Opp. at 12–14. But this remedy is unavailable for the same reasons. *See W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 138 (D.D.C. 2008) ("Moreover, when a statute of limitations has been regarded as jurisdictional, "it has acted as an absolute bar [that cannot] be overcome by the application of judicially recognized exceptions . . . such as waiver, estoppel, equitable tolling . . . fraudulent concealment, the discovery rule . . . and the continuing violations doctrine."), quoting *Felter v. Norton*, 412 F. Supp. 2d 118, 122 (D.D.C. 2006). [3]

---

3   Even if subsection (a) is deemed to be a mere time bar and not jurisdictional, plaintiff has not supplied any equitable grounds for tolling a deadline that expired at least thirty years ago, when plaintiff was prompted to file a second petition, and possibly more than seventy years ago. And the fact that the government ignored the pending petition for all those years, while inexcusable, does not constitute the sort of affirmative conduct that lulled plaintiff into inaction which is needed for tolling on estoppel grounds. *See Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998), quoting *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)

Because the Court is required to find that section 2401(a) is applicable and jurisdictional, and that the six-year limitations period has expired, it will dismiss Counts II and III for lack of subject matter jurisdiction.

**B.      Plaintiff has standing to challenge the 2015 Regulations under Counts IV, V, and VI.**

In Count IV, plaintiff accuses the agency of acting in an "arbitrary and capricious manner," and acting outside of its "congressionally delegated authority" in violation of the APA when it adopted the 2015 Regulations. Am. Compl. ¶¶ 179, 182. According to plaintiff:

> Congress did not authorize or intend that the BIA would be allowed to sit on a petition for redress for twenty years, processing petitions at an average rate of less than two per year, and then cite the agency's own track record of extreme delay as a justification for foreclosing the ability of a Tribe to re-petition under a different and more equitable set of criteria.

*Id.* ¶ 182. In Count V, plaintiff contends that the "blanket refusal to reconsider a revised petition previously denied under a system where the fairness and reliability of existing rules have been called into question" violates its Due Process rights under Fifth Amendment. *Id.* ¶ 192. And in Count VI plaintiff alleges that 2015 Regulations discriminate against similarly-situated Tribes by permitting some Tribes to petition and be recognized under less burdensome criteria while denying that same opportunity to plaintiff. *Id.* ¶¶ 196–98. For these reasons plaintiff asks the Court to declare the 2015 Regulations "unlawful, unconstitutional, and unenforceable." *Id.* "Prayer for Relief" ¶ 2.

Defendants argue that plaintiff lacks standing to challenge the 2015 Regulations in Counts IV, V, and VI because it was not injured by the rule's ban on re-petitioning. According to defendants, such a prohibition was already put in place by regulations adopted in 1994, so "the

---

("Tolling on estoppel grounds is proper where . . . affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.").

10

2015 [R]egulations did not injure [p]laintiff as they merely continued the pre-existing bar on re-petitioning." Defs.' Mot. at 18. This is a very cramped interpretation of the standing doctrine. It is indisputable that the agency initiated a new rulemaking process in 2014 that expressly proposed enacting a provision that would have allowed for re-petitioning, and it invited public comment on that issue. Plaintiff submitted comments on the proposed rule because it was directly affected by the re-petitioning ban, and a change in the regulations would have enabled it to submit a "new petition based on new facts and circumstances" that the Band had gathered since the agency denied its petition in 2006. Pl.'s Opp. at 15–16.

Because the Court finds that plaintiff was plainly adversely affected and aggrieved by the choices made by the agency when it promulgated the 2015 Regulations, and that its injury is concrete and particularized, it will allow Counts IV, V, and VI to proceed.

1.  **Constitutional Standing**[4]

Standing is a necessary predicate to any exercise of federal jurisdiction, and if it is lacking, then the dispute is not a proper case or controversy under Article III of the U.S. Constitution, and federal courts have no subject matter jurisdiction to decide the case. *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1361 (D.C. Cir. 2012). To establish standing, "the [p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), citing *Lujan*, 504 U.S. at 560–61 (internal quotation marks omitted). The Supreme Court explained in *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883 (1990) that a claimant bringing an action under the APA must identify some agency action that affects him in a specified fashion

---

[4] Although neither party briefed the issue, the Court also finds that plaintiff has prudential standing based on the face of its complaint. Claims brought under the APA, "must also establish . . . 'prudential standing' by showing that [a party's] interests are 'arguably within the zone of interests to be protected or regulated by the statute . . . in question.'" *Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*, 87 F.3d 1356, 1359 (D.C. Cir. 1996), quoting *Clarke v. Secs. Indus. Ass'n*, 479 U.S. 388, 396 (1987). A party may demonstrate that it is within the zone of interests "protected" by the statute:

> [I]f it is among those [who] Congress expressly or directly indicated were the intended beneficiaries of a statute or if it is a suitable challenger to enforce the statute – that is, if its interests are sufficiently congruent with those of the intended beneficiaries that the litigants are not 'more likely to frustrate than to further . . . statutory objectives.

*Id.* (internal citations and quotation marks omitted). Here, plaintiff clearly falls within the zone of interests since it maintains that it is an unrecognized Indian Tribe and the regulations it challenges squarely deal with Indian affairs and the federal recognition process. *See Mackinac Tribe v. Jewell*, 829 F.3d 754, 757 (D.C. Cir. 2016) ("Congress delegated to the Secretary the regulation of Indian relations and affairs, *see generally* 25 U.S.C. § 2, including authority to decide in the first instance whether groups have been federally recognized in the past or whether other circumstances support current recognition."); *see also* 25 C.F.R §§ 83.2, 83.3 (2015) (providing that the regulations "establish[ ] procedures and criteria for the Department to use to determine whether a petitioner is an Indian Tribe eligible for special programs and services" so the regulations apply "only to indigenous entities that are not federally recognized Indian Tribes").

and must show that he has "suffered legal wrong" because of the challenged agency action or is "adversely affected or aggrieved" by that action "within the meaning of a relevant statute." "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. . . . [so] plaintiff must 'clearly . . . allege facts demonstrating' each element." *Spokeo, Inc.*, 136 S. Ct. at 1547. When analyzing the standing issue, the Court must be "careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *In re Navy Chaplaincy*, 534 F.3d 756, 760 (D.C. Cir. 2008).

Here, defendants challenge the first element of Article III standing, injury-in-fact, with respect to Counts IV, V, and VI. Defs.' Mot. 17–20.[5] "[T]he injury-in-fact requirement requires a plaintiff to show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.*, 136 S. Ct. at 1543. To be "concrete," the injury "must actually exist," meaning that it is real, and not abstract, although concreteness is "not . . . necessarily synonymous with 'tangible.'" *Id.*, at 1548–49; *see also Attias v. Carefirst, Inc.*, 865 F.3d 620, 626 (D.C. Cir. 2017). And "[f]or an injury to be particularized it 'must affect a plaintiff in a personal and individual way.'" *Spokeo, Inc.*, 136 S. Ct. at 1548, quoting *Lujan*, 504 U.S. at 560 n. 1. Particularization requires plaintiff to raise more than a "generalized grievance," *id.* at 1555, but "[t]he fact that an injury may be suffered

---

5 However, the Court also finds that plaintiff satisfies the other two elements – whether the injury is fairly traceable to the challenged action of defendants and whether the injury will be redressed by a favorable decision. Here, it is obvious to the Court that plaintiff's injury can be traced to the 2015 Regulations since the final rule rejected the proposed re-petitioning rule which in turn prevents plaintiff from seeking federal recognition under 25 C.F.R. § 83. Moreover, plaintiff's injury can be redressed, assuming the Court rules that the 2015 Regulations are unlawful.

13

by a large number of people does not of itself make that injury a nonjusticiable generalized grievance." *Id.* at 1548 n. 7.

**2.     The Rule Making Process**

The facts related to the agency's rulemaking process bear directly on the standing issue. On May 29, 2014, the BIA published a public notice of a proposed rule to revise the regulations governing the federal recognition of Indian Tribes under 25 C.F.R. § 83 based on its recognition that the process was "criticized as 'broken.'" Proposed Rule at 30766. The agency summarized the purpose of the proposed rule as follows:

> The revisions seek to make the process and criteria more transparent, promote consistent implementation, and increase timeliness and efficiency, while maintaining the integrity of the process. The current process has been criticized as ''broken'' or in need of reform. Specifically, the process has been criticized as too slow (a petition can take decades to be decided), expensive, burdensome, inefficient, intrusive, less than transparent and unpredictable. The proposed rule would reform the process by, among other things, institutionalizing a phased review that allows for faster decisions; reducing the documentary burden; allowing for a hearing on the proposed finding to promote transparency and process integrity; establishing the Assistant Secretary's final determination as final for the Department to promote efficiency; and establishing objective standards, where appropriate, to ensure transparency and predictability.

*Id.*

On the issue of re-petitioning, the agency explained that the proposed rule would "[a]llow, in limited circumstances, a petitioner previously denied under the regulations to re-petition under

14

the revised rule," and it invited public comment on this and other proposed changes.[6] *Id.*

During the notice and comment period, plaintiff submitted comments to the agency on the proposed changes, including the proposed re-petitioning provision, which would have given it the opportunity to re-petition after the 2006 denial. Am. Compl. ¶ 144; Ex. D to Am. Compl. [Dkt. # 11-4]. The Band wrote that it supported the proposed rule for re-petitioning because "[a]llowing new petitioners to be recognized under less onerous criteria without giving the same

---

6  The agency's proposed rule provided that:

> (1) A petitioner would have been allowed to re-petition only if:
>   (i) Any third parties that participated as a party in an administrative reconsideration or Federal Court appeal concerning the petitioner has consented in writing to the re-petitioning; and
>   (ii) The petitioner proves, by a preponderance of the evidence, that either:
>     (A) A change from the previous version of the regulations to the current version of the regulations warrants reconsideration of the final determination; or
>     (B) The ''reasonable likelihood'' standard was misapplied in the final determination.
>
> (2) To initiate the re-petitioning process, the petitioner must submit to the Office of Hearings and Appeals a certification, signed and dated by the petitioner's governing body, stating that it is the petitioner's official request for re-petitioning and explaining how it meets the conditions of paragraph (b)(1) of this section.
>   (i) The petitioner need not re-submit materials previously submitted to the Department but may supplement the petition.
>   (ii) The OHA judge may receive pleadings, hold hearings, and request evidence from OFA and the petitioner, and will issue a decision regarding whether the petitioner may re-petition.
>
> (3) The OHA judge's decision whether to allow re-petitioning is final for the Department and is a final agency action under the Administrative Procedure Act, 5 U.S.C. 704.

Proposed Rule at 30774.

15

opportunity to a Tribe denied acknowledgement under prior more stringent criteria would be grossly unfair." Ex. D to Am. Compl.

Ultimately, the agency did not adopt the re-petitioning provision. On July 1, 2015, it published its final rule and explained:

> The final rule promotes consistency, expressly providing that evidence or methodology that was sufficient to satisfy any particular criterion in a previous positive decision on that criterion will be sufficient to satisfy the criterion for a present petitioner. The Department has petitions pending that have never been reviewed.
>
> Allowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review, and would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated with re-petitions on the Department, and OFA in particular. The Part 83 process is not currently an avenue for re-petitioning.

2015 Regulations at 37875. It is *this* rule, enacted in 2015, that plaintiff challenges in Counts IV, V, VI.

**(3)** **Plaintiff's injury is concrete and particularized.**

The Court finds that plaintiff was adversely affected and aggrieved by the 2015 Regulations which prohibit it from filing a renewed petition seeking to be federally recognized as an Indian Tribe. Am. Compl. ¶¶ 136−48; Defs.' Mot. at 18; *see* 25 C.F.R. § 83.4(d). The injury is particularized because the Burt Lake Band is one of the Tribes that falls squarely within the prohibition, and it is concrete because the 2015 Regulations eliminate plaintiff's opportunity to renew its effort to seek the federal recognition that carries with it a number of rights and benefits,

including eligibility for certain federal funds.[7] *See Fund For Animals, Inc. v. Norton,* 322 F.3d 728, 733–34 (D.C. Cir. 2003), citing *Sierra Club v. E.P.A.*, 292 F.3d 895, 899–900 (D.C. Cir. 2002) ("In many if not most cases the petitioner's standing to seek review of administrative action is self-evident. In particular, if the complainant is an object of the action (or forgone action) at issue – as is the case usually in review of a rulemaking and nearly always in review of an adjudication – there should be 'little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'"); *Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489, 1496 n. 9 (D.C. Cir. 1997) (holding that the plaintiff suffered an injury-in-fact "because the [BIA's] Final Decision . . . may affect its eligibility for certain federal funds."); *see also Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1101–02 (D.C. Cir. 2005) (holding that to demonstrate injury-in-fact for an equal protection claim, a plaintiff must allege that the government imposed a barrier that makes it more difficult to obtain a benefit than other members of a similarly situated group).

---

7     The regulation enumerates the rights and benefits that flow from federal recognition.

> Federal recognition:
>
>> (a) Is a prerequisite to the protection, services, and benefits of the Federal Government available to those that qualify as Indian tribes and possess a government-to-government relationship with the United States;
>> (b) Means the tribe is entitled to the immunities and privileges available to other federally recognized Indian tribes;
>> (c) Means the tribe has the responsibilities, powers, limitations, and obligations of other federally recognized Indian tribes; and
>> (d) Subjects the Indian tribe to the same authority of Congress and the United States as other federally recognized Indian tribes.

25 C.F.R. § 83.2.

The Court also finds that the fact that the bar on re-petitioning was in place prior to the 2015 Regulations is completely irrelevant, since the agency undertook a rulemaking process in 2014 that proposed a new rule that would allow Tribes to re-petition, and it is the agency's rejection of this provision in its final rule that plaintiff challenges.[8]

Defendants cite to a single case in support of the proposition that plaintiff was not injured. Defs.' Mot. at 74, citing *Miami Nation of Indians of Ind., Inc. v. Babbitt*, 112 F. Supp. 2d 742, 744 (N.D. Ind. 2000). But that case, from a district court in another circuit, is inapposite because it adjudicates the merits of a Tribe's denied petition and has nothing to do with standing. *Miami Nation of Indians of Ind., Inc.,* 112 F. Supp. 2d. at 744–45. Therefore, for the reasons stated the Court will allow Counts IV, V, and VI to proceed.

**D.    The Court cannot grant relief under Count VII.**

Plaintiff's final count seeks relief that the Court has no authority to grant. In Count VII, plaintiff invokes the Federally Recognized Indian Tribe List Act, 25 U.S.C. § 1530, and asks the Court to order the Secretary of the Interior to place the Band on the List. Am. Compl. ¶¶ 201, 205. Defendants move to dismiss this count for failure to state a claim upon which relief granted, noting that the "List Act does not provide an independent cause of action . . . ." Defs.' Mot. at 20. The Court agrees. The Court does not have free-standing authority to by-pass the entire federal

---

8   In support of the argument that plaintiff was not injured, defendants also contend that even if plaintiff were allowed to re-petition, its petition would nonetheless "fail even under the new regulations." Defs.' Mot. at 18. But the issue before the Court is standing, not the merits. *Banner Health v. Price*, 867 F.3d 1323, 1334 (D.C. Cir. 2017), citing *Sierra Club v. EPA*, 699 F.3d 530, 533(D.C. Cir. 2012) ("For purposes of standing, this court is to 'assume' that a plaintiff is 'correct on the merits' and that the court will grant the relief sought.").

18

recognition process and order the agency to add plaintiff to the List, and the avenue to seek review of agency action is under the APA. *See* 5 U.S.C. § 706.[9]

## CONCLUSION

For the reasons stated, Count I has been withdrawn, and the Court will dismiss Counts II and III for lack of subject matter jurisdiction. Counts IV, V, and VI will proceed because the Court finds that plaintiff has standing to challenge the 2015 Regulations. Count VII will be dismissed for failure to state a claim upon which relief can be granted. A separate order will issue.

/s/ Amy B Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: March 29, 2018

---

9    In its opposition to defendants' motion to dismiss, plaintiff argues for the first time that in this count, it pled "in the alternative a writ of mandamus claim should its APA claim fail." Pl.'s Opp. at 25. But this claim does not appear anywhere in the amended complaint. *See* Fed. R. Civ. P. 8(a). And mandamus relief is only permissible when a plaintiff demonstrates "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016), citing *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011). The complaint points to no legal source of a mandatory duty the agency owes to plaintiff at this time that can be enforced through a writ of mandamus.