## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BURT LAKE BAND OF OTTAWA AND CHIPPEWA INDIANS, | ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:17-cv-00038-ABJ |
| THE HONORABLE RYAN ZINKE, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

### DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants Ryan Zinke, Tara Sweeney,[1] and the United States Department (the "Department") of the Interior (collectively, the "Defendants") hereby move for summary judgment to be entered in their favor on all claims remaining in this litigation, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for the reasons stated in the accompanying Memorandum of Points and Authorities.

Respectfully submitted this 14th day of December, 2018.

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources Division

*s/ Devon Lehman McCune*
DEVON LEHMAN McCUNE
Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202

---

[1] Tara Sweeney was sworn in as Assistant Secretary–Indian Affairs on July 30, 2018. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Sweeney automatically replaces former Acting Assistant Secretary Michael S. Black as a defendant.

Tel: (303) 844-1487
Fax: (303) 844-1350
devon.mccune@usdoj.gov

OF COUNSEL
Samuel E. Ennis
John-Michael Partesotti
United States Department of the Interior
Office of the Solicitor

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BURT LAKE BAND OF OTTAWA AND CHIPPEWA INDIANS, ) ) ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:17-cv-00038-ABJ |
| THE HONORABLE RYAN ZINKE, et al., ) ) | |
| Defendants. ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I.   INTRODUCTION

Defendants Ryan Zinke, Tara Sweeney, and the United States Department (the "Department") of the Interior (collectively, the "Defendants") are entitled to summary judgment on Plaintiff Burt Lake Band of Ottawa and Chippewa Indians' ("Plaintiff" or "Burt Lake Band") claims. In 2015, the Department promulgated a final rule to update the regulatory process by which it officially acknowledges Indian tribes. The updated rule promotes a more transparent, timely, and consistent acknowledgment process, while maintaining the substantive rigor and integrity of the criteria that have been in place for nearly forty years.

The federal acknowledgment regulations, codified at 25 C.F.R. Part 83 ("Part 83") invite public comment, and petitioner comment, on the Department's proposed finding. By the time the Department issues a final decision on an acknowledgment petition, a petitioner has had multiple opportunities to develop and submit evidence and to respond to the Department's proposed findings, as well as those of interested third parties. In light of these procedural safeguards, since 1994, Department regulations have prohibited entities that have gone through

the Part 83 process and been found not to meet the standards for federal recognition from re-petitioning for acknowledgement.

Plaintiff went through the Part 83 process, with multiple opportunities to present evidence to the Department and respond to the Department's findings. In 2006, the Department determined that Plaintiff did not satisfy Part 83. Plaintiff had the opportunity to appeal the Department's finding to the Interior Board of Indian Appeals ("IBIA")[1] or to the United States District Court but failed to do so. Instead, Plaintiff brought this suit eleven years later challenging Part 83's decades-long ban on re-petitioning.

The Department is entitled to summary judgment on Plaintiff's claims. The Department acted within the broad scope of authority delegated to it by Congress to manage Indian affairs and is entitled to *Chevron* deference. In prohibiting re-petitioning in both the 1994 and 2015 revisions to Part 83, the Department reasonably determined that re-petitioning would undercut the Department's goals of making the acknowledgment process quicker, less expensive, and more transparent. Denied petitioners, including Plaintiff, have had many opportunities to develop and submit evidence to the Department and to request reconsideration within the Department or otherwise appeal adverse decisions to United States district court. The Department therefore acted reasonably in determining that the 1994 ban on re-petitioning should not change in the 2015 Part 83 amendments.

In addition, one of the goals of the Department in revising the regulations was to ensure consistency between determinations, so that the same type of evidence would lead to the same conclusion in every case. As such, there are very few substantive differences between the 1994

---

[1] Prior to the 2015 revisions to Part 83, the regulations allowed petitioners to file an appeal with the IBIA seeking reconsideration of an unsuccessful Part 83 petition. *See* 25 C.F.R. § 83.11 (1994).

and the 2015 regulations, none of which would either apply to Plaintiff's petition or otherwise change the result in any negative Part 83 determination issued before the 2015 Final Rule. The Department therefore reasonably concluded that re-petitioning would not lead to different results in Plaintiff's, or any other, case and it would not further the Department's interests in allowing such a process.

Nor did the Department did violate Plaintiff's due process rights. Plaintiff does not have a protected property or liberty right because due process protections do not attach to applications for benefits, as opposed to the receipt of benefits. Also, Plaintiff had a full and fair opportunity to present evidence to the Department, voluntarily declined to appeal its unsuccessful Part 83 petition, and can seek congressional recognition in lieu of petitioning the Department again. Plaintiff also does not have a valid claim that Defendants violated their First Amendment right to petition the government.

Finally, Plaintiff is not being treated differently than other denied petitioners, and there is a rational basis to treat petitioners who have been through the Part 83 process differently than those groups that have not been through the process. This Court should therefore grant summary judgment in favor of the Department on Plaintiff's equal protection claim.

For the foregoing reasons and as explained further below, the Department requests that this Court grant summary judgment in its favor.

## II.      BACKGROUND

### A.      Legal background

#### 1.      The Federal Acknowledgment Process

Federal acknowledgment of groups as Indian tribes establishes a government-to-government relationship with the United States and is a prerequisite to nearly all of the protection, services, and benefits of the federal government available to Indian tribes. 25 C.F.R.

§ 83.2 (2015).  The power to federally recognize Indian tribes lies with Congress and the

Executive and is essentially committed to the political branches.  *See United States v. Holliday*,

70 U.S. 407, 419 (1865) (noting that if executive and other political departments recognize

Indians as a tribe, courts must do the same); *Cherokee Nation of Okla. v. Babbitt*, 117 F.3d 1489,

1496 (D.C. Cir. 1997) (same).  Historically, Indian tribes were granted federal recognition

through treaties approved by Congress, congressional statute, or *ad hoc* decisions within the

Executive branch.  In 1978, the Department established a comprehensive regulatory process for

the review and evaluation of petitions for acknowledgment of Indian tribes.  *See* 25 C.F.R. pt.

83; *see also* 43 Fed. Reg. 39,361 (Aug. 24, 1978).  The Department initially revised these

regulations in 1994.  *See* Procedures for Establishing That an American Indian Group Exists as

an Indian Tribe, 59 Fed. Reg. 9,280 (Feb. 25, 1994) ("1994 Final Rule").

The regulations establish uniform standards and procedures to answer the question "what

is an Indian tribe?"  *Miami Nation of Indians of Ind., Inc. v. Babbitt*, 887 F. Supp. 1158, 1167

(N.D. Ind. 1995) ("*Miami Nation I*").  The Office of Federal Acknowledgment ("OFA")

evaluates petitions for acknowledgment and is composed of experts in anthropology, genealogy,

and history.  OFA reports to the Assistant Secretary–Indian Affairs ("AS-IA"), the ultimate

decision-maker under Part 83.  25 C.F.R. §§ 83.43–83.45 (2015).

Part 83[2] has seven mandatory criteria that a petitioner must meet to be acknowledged as a

federally recognized Indian tribe.[3]  These criteria are designed to demonstrate continuous

---

[2] References in this section are largely to the 1994 regulations because Plaintiff's petition was
examined under these regulations.

[3] These seven criteria, delineated in 25 C.F.R. § 83.7 in the 1994 Final Rule and 25 C.F.R. §
83.11 in the 2015 Final Rule, require the petitioner to demonstrate that sources identify the
petitioner as an American Indian entity on a substantially continuous basis; the petitioner is a
distinct community for a delineated timeframe; the petitioner maintains political influence or

existence as a social and political community from the historical Indian tribe. Failure to meet any one of the criteria will result in a determination that the group is not entitled to a government-to-government relationship with the United States. 25 C.F.R. § 83.2 (1994). As applied under the 1978 regulations and made explicit in the 1994 and 2015 regulations, a criterion is considered met "if the available evidence establishes a reasonable likelihood of the validity of the facts relating to that criterion." § 83.6(d) (1994).

Under the Part 83 regulations, after a review of the summary and the evidence, the Assistant Secretary issues a proposed finding based on the evidence in the administrative record. § 83.10(h) (1994). The petitioner and third parties are then given time to comment on the proposed finding and submit additional arguments and evidence to support or rebut it, and the Department provides technical advice regarding the proposed finding. § 83.10(i) (1994). The petitioner then has the opportunity to respond to any third party comments. § 83.10(k) (1994). After the responses, the Department's experts review the evidence and arguments, and prepare a summary under the criteria that is also subjected to peer and solicitor review. Then the Assistant Secretary issues a final determination either acknowledging the group as an Indian tribe or denying the petition. §§ 83.10(l), (m) (1994).

The regulations allow a petitioner to request reconsideration of a final determination with the Interior Board of Indian Appeals, and a final determination is not final and effective until the period for reconsideration passes or action on a request for reconsideration is complete. § 83.11(a) (1994).

---

authority over its members as an autonomous entity; the petitioner has a governing document with membership criteria; the petitioner has a membership that descends from a historical Indian tribe; the petitioner is composed principally of persons who are not members of any federally recognized tribe; and, the petitioner is not subject to congressional legislation that terminated or forbids a federal relationship.

2.      The 2015 Revisions to the Federal Acknowledgment Regulations

In 2015, the Department issued a final rule revising the Part 83 federal acknowledgment regulations. Federal Acknowledgment of American Indian Tribes, 80 Fed. Reg. 37,862 (July 1, 2015) ("2015 Final Rule"). "The revisions seek to make the process and criteria more transparent, promote consistent implementation, and increase timeliness and efficiency, while maintaining the integrity and substantive rigor of the process." *Id.*

One of the primary goals of the revisions was to streamline the Part 83 process by creating a two-phased review. Rather than evaluating all seven criteria at once, the Department first determines whether a petitioner demonstrates that it has met criteria (d) through (g). 25 C.F.R. § 83.26(a) (2015). If a petitioner succeeds in meeting those criteria, the Department next considers criteria (a) through (c). 25 C.F.R. § 83.26(b) (2015). One of the benefits of the phased review is the expediting of negative decisions after the first phase, "thereby resolving petitions sooner, reducing time delays, increasing efficiency, and preserving resources." 80 Fed. Reg. at 37,877. Additionally, the 2015 Final Rule sought to clarify the criteria by "codifying past Departmental practice in implementing the criteria." *Id.* at 37,863; *see also* 25 C.F.R. § 83.10(4) (2015) (clarifying that "[e]vidence or methodology that the Department found sufficient to satisfy any particular criterion in a previous decision will be sufficient to satisfy the criterion for a present petitioner"). Finally, the 2015 Final Rule increases transparency by "enhancing notice to tribes and local governments and . . . by posting all publicly available petition documents on the Department's Web site." 80 Fed. Reg. at 37,862.

Importantly, the revisions described above have no effect on the underlying criteria under which the Department reviews each petition. In fact, the Department made clear that the 2015 Final Rule "does not substantively change the Part 83 criteria, except in two instances." *Id.* at 37,863. The first instance is that criterion 83.11(a), which requires evidence of identification of

the petitioner as an Indian entity, now may be satisfied by contemporaneous self-identification, rather than external identification.  *Id.* The second instance relates to how marriages are counted and considered as evidence of distinct community for the purpose of meeting the criterion contained in 25 C.F.R. § 83.11(b).  *Id.* The rule maintained previous Department precedent that required that at least eighty percent of the membership descend from the historical Indian tribe. *Id.* at 37,866. The rule also maintains "the current standard of proof [for a given criterion] as 'reasonable likelihood.'"  *Id.* at 37,863, 37,875.

The 2015 regulations also allow for reconsideration.  25 C.F.R. §§ 83.38–83.39. Petitioners have sixty day to file a challenge of the proposed finding before an Administrative Law Judge in the OHA.  *Id.* § 83.38. If a challenge is filed, the ALJ conducts an on-the-record hearing and prepares a recommended decision that is forwarded with the hearing record to the AS-IA.  *Id.* § 83.39.

### 3.    The regulations' ban on re-petitioning

The 1978 regulations were silent on the question of re-petitioning.  59 Fed. Reg. 9280, 9291. The 1994 Final Rule, however, included provisions prohibiting groups that had previously petitioned and been denied federal acknowledgment from re-petitioning.  25 C.F.R. § 83.3(f) (1994) (stating that "groups that previously petitioned and were denied Federal acknowledgment under these regulations or under previous regulations in part 83 of this title, may not be acknowledged under these regulations"); 25 C.F.R. § 83.10(p) (1994) ("A petitioner that has petitioned under this part or under the acknowledgment regulations previously effective and that has been denied Federal acknowledgment may not re-petition under this part."); *Miami Nation of Indians of Ind., Inc. v. Babbitt*, 112 F. Supp. 2d 742, 759 (N.D. Ind. 2000) ("*Miami Nation II*") (noting that the petitioning group "had no right to any reevaluation under the 1994 regulations,

because the 1994 regulations don't apply to a petitioner that was denied acknowledgment under the 1978 regulations").

In the 1994 Final Rule, the Department acknowledged that most commenters were in favor of allowing re-petitioning because of concerns "that undiscovered evidence which might change the outcome of decisions could come to light in the future" and that "petitions could be denied because the petitioner's research was inadequate." 59 Fed. Reg. at 9291. The Department considered these comments, but determined not to allow re-petitioning because "there should be an eventual end to the present administrative process." *Id.* The Department noted that denied petitioners "went through several stages of review with multiple opportunities to develop and submit evidence." *Id.* It also noted that allowing re-petitioning "would burden the process for the numerous remaining petitioners," and that the changes in the regulations should not "result in different outcomes for cases previously decided." *Id.* In addition, the Department noted that denied petitioners can seek legislative recognition if substantial new evidence comes to light. *Id.*

In the 2014 Proposed Rule soliciting comments on Part 83 revisions, the Department proposed a limited opportunity for re-petitioning:

> If a third party individual or entity has participated in an IBIA or Secretarial reconsideration or an Administrative Procedure Act appeal in Federal court and ultimately prevailed, the denied petitioner may seek to re-petition only with the consent of the individual or organization. If the individual or organization consents, or a third party did not participate in a reconsideration or appeal, an [Office of Hearings and Appeals ("OHA")] judge will determine whether the changes to the regulations warrant a reconsideration of that particular final determination or whether the wrong standard of proof was applied to the final determination.

Federal Acknowledgment of American Indian Tribes, 79 Fed. Reg. 30,766, 30,767 (May 29, 2014) ("Proposed Rule"). If the third party consented, or if no third party participated in the

administrative process or appeal, the OHA judge would determine whether the petitioner showed, by a preponderance of the evidence, that reconsideration of the final decision is warranted due to either a change between the 1994 and 2015 Final Rules or the Department's misapplication of the "reasonable likelihood" standard. *Id.* "Because the changes to the regulations are generally intended to provide uniformity based on previous decisions, re-petitioning would be appropriate only in those limited circumstances where changes to the regulations would likely change the previous final determination." *Id.*

After reviewing the comments received on the Proposed Rule, the Department declined to adopt the proposed re-petitioning language. *Id.* at 37,874–75; *see* 25 C.F.R. § 83.4(d) (2015) (stating that the Department will not acknowledge an entity "that previously petitioned and was denied Federal acknowledgment under . . . previous regulations in part 83 of this title"). As the Department explained in the 2015 Final Rule, the goal of the rule was to "promote[] consistency, expressly providing that evidence or methodology that was sufficient to satisfy any particular criterion in a previous positive decision on that criterion will be sufficient to satisfy the criterion for a present petitioner." 80 Fed. Reg. at 37,875. In other words, the Department did not intend for the revised regulations to result in a different determination for a previous petitioner. In addition, because there are extremely complex and lengthy petitions that OFA is actively adjudicating at any given time, "[a]llowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review, and would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated with re-petitions on the Department, and OFA in particular." *Id.*

## B.    Factual background

Plaintiff Burt Lake Band alleges that it was formerly called the Cheboygan Band of Ottawa and Chippewa Indians. Compl. ¶ 1, ECF No. 11 (hereinafter "Am. Compl."). Plaintiff

petitioned the Department for federal acknowledgment in 1985. *Id.* ¶ 99. In 2001, while its acknowledgment petition was still pending, Plaintiff sued the Department in this Court, requesting that the Court declare it unnecessary for it to proceed under the federal acknowledgment regulations and require the Department to unilaterally deem the Band to be federally recognized. *Burt Lake Band of Ottawa & Chippewa Indians v. Norton*, 217 F. Supp. 2d 76, 77 (D.D.C. 2002). Both the federally recognized Sault Ste. Marie Tribe of Chippewa Indians and the Little Traverse Bay Bands of Ottawa Indians participated in the briefing before the Court in support of the Department's opposition to Plaintiff's claims. *Id.* at 76. This Court dismissed Plaintiff's suit, finding that it lacked jurisdiction because Plaintiff had failed to exhaust its administrative remedies. *Id.* at 80.

The Department issued a Proposed Finding against acknowledgment of Plaintiff as a federally recognized Indian tribe on March 25, 2004. 69 Fed. Reg. 20,027 (Apr. 15, 2004). Plaintiff then had the opportunity to supplement the record and address the areas of concern identified in the Proposed Finding and to receive technical assistance from the Department in preparing a response. 25 C.F.R. § 83.10(i)-(k) (1994). In 2006, the Department issued a Final Determination denying Plaintiff's petition. 71 Fed. Reg. 57,995 (Oct. 2, 2006); Am. Compl. ¶¶ 14, 107. The Final Determination became final in January 2007, when Plaintiff did not seek reconsideration before the IBIA to which it was entitled under the 1994 Final Rule. *See generally* 25 C.F.R. § 83.11 (1994). Plaintiff also did not appeal the Department's decision to this Court, and the time for doing so has long since expired.

Plaintiff filed its Complaint in the current litigation on January 9, 2017, and filed an Amended Complaint on June 1, 2017. Plaintiff voluntarily dismissed the first count of its Amended Complaint, and this Court granted Defendants' motion to dismiss as to Plaintiff's

Counts II, III, and VII.  Mem. Op. on Mot. to Dismiss at 10, 19, ECF No. 20.  The Court found

that Plaintiff had standing to challenge the 2015 Final Rule's bar on re-petitioning and denied

Defendants' Motion on Counts IV through VI.

On October 12, 2018, Plaintiff moved for summary judgment on all claims, arguing that

25 C.F.R. § 83.4(d) should be declared unlawful so that Plaintiff can submit allegedly newly

gathered documentation to satisfy the criteria for recognition.  Mem. of Points & Auths. in Supp.

of Pl.'s Mot. for Summ. J., ECF No. 27-1 at 3 (hereinafter "Pl.'s Mem.").

## III.  STANDARD OF REVIEW

In judicial review under the APA, the Court need not and, indeed, may not, "find"

underlying facts; thus, there are no material facts essential to the Court's resolution of this action.

*See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "Summary judgment is the proper

mechanism for deciding, as a matter of law, whether an agency action is supported by the

administrative record and consistent with the APA standard of review."  *Ernest K. Lehmann &*

*Assocs. of Mont., Inc. v. Salazar*, 602 F. Supp. 2d 146, 153 (D.D.C. 2009), *aff'd,* 377 F. App'x

28 (D.C. Cir. 2010) (citing *Stuttering Found. of Am. v. Springer*, 498 F. Supp. 2d 203, 207

(D.D.C. 2007)); *see also* FED. R. CIV. P. 56(a) ("The court shall grant summary judgment if the

movant shows that there is no genuine dispute as to any material fact and the movant is entitled

to judgment as a matter of law.").  Because an administrative review proceeding, such as this

one, does not implicate the possibility of a trial, if the Court were to conclude from a review of

the administrative record that the Department's decision was arbitrary or capricious, the remedy

would be to remand the matter for agency reconsideration.  *Vt. Yankee Nuclear Power Corp. v.*

*Nat. Res. Def. Council*, 435 U.S. 519, 549 (1978).

When reviewing an agency's interpretation of the statute it administers, the Court applies

the familiar test from *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S.

837, 842–43 (1984). *See Kimberlin v. U.S. Dep't of Justice*, 318 F.3d 228, 231 (D.C. Cir. 2003) (applying *Chevron* test when plaintiffs alleged that agency's regulations exceeded its statutory authority); *Am. Library Ass'n v. FCC*, 406 F.3d 689, 698–99 (D.C. Cir. 2005) ("In assessing whether the Commission's *Flag Order* exceeds the agency's delegated authority, we apply the familiar standards of review enunciated by the Supreme Court in [*Chevron*] and *United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001)." (internal citation omitted)). First, the Court must determine "whether Congress has directly spoken to the precise question at issue." *City of Arlington v. FCC*, 569 U.S. 290, 296 (2013). If so, the Court's inquiry ends because the Court and the agency "must give effect to the unambiguously expressed intent of Congress." *Id.* "But 'if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Id.*

"*Chevron* is principally concerned with whether an agency has authority to act under a statute." *Arent v. Shalala,* 70 F.3d 610, 615 (D.C. Cir. 1995). "*Chevron* analysis 'is focused on discerning the boundaries of Congress' delegation of authority to the agency; and as long as the agency stays within that delegation, it is free to make policy choices in interpreting the statute, and such interpretations are entitled to deference.'" *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1174 (D.C. Cir. 2003) (quoting *Arent*, 70 F.3d at 615).

The APA directs the Court to uphold an agency's decision unless it is deemed to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Plaintiff bears the burden of showing that the Department acted arbitrarily in prohibiting Part 83 re-petitions. *Abington Crest Nursing & Rehab. Ctr. v. Sebelius*, 575 F.3d 717, 722 (D.C. Cir. 2009) (citing *City of Olmsted Falls v. Fed. Aviation Admin.*, 292 F.3d 261, 271 (D.C. Cir. 2002)). Although the inquiry must be thorough, the standard of review is narrow

and highly deferential, the Department's decision is "entitled to a presumption of regularity," and the Court cannot substitute its judgment for that of the agency decision maker. *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001). The agency need only "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

## IV.    ARGUMENT

The Department is entitled to summary judgment on all remaining counts (i.e., Counts IV, V, and VI). The Department acted within its authority by barring groups from re-petitioning, and its interpretation is entitled to deference. The Department also acted reasonably in preventing re-petitioning, given that the revised regulations aimed to make the process faster and the standards for recognition did not change in any way applicable to Plaintiff. In addition, the regulations' ban on re-petitioning does not violate Plaintiff's due process rights, as Plaintiff does not have a protected interest and in any event received a full and fair process. Nor do the regulations violate the equal protection clause because there is a rational basis to treat groups that have already gone through the Part 83 process differently than groups that have not.

As an initial matter, Plaintiff's Memorandum is based on several important and blatant inaccuracies. First, Plaintiff repeatedly states that the Department first enacted a regulatory prohibition on re-petitioning in 2015, and that the 1994 regulations did not contain a ban on re-petitioning. *See* Pl.'s Mem. at 30 (stating that the 1994 version of Part 83 under which the Band submitted its petition in 1985 did not contain a prohibition on re-petitioning, "nor was there any such prohibition when BIA rejected the Band's petition in 2006"); *see also id.* at 34–35 (claiming that the re-petition ban is arbitrary and capricious in part because it applied to

petitioners, like Plaintiff, who "submitted their Petitions under processes which did not prohibit re-petitioning"). This is plainly false. The 1994 regulations prohibited groups, like Plaintiff, that were previously denied acknowledgment from re-petitioning. *See* 25 C.F.R. § 83.10(p) (1994) ("A petitioner that has petitioned under this part or under the acknowledgment regulations previously effective and that has been denied Federal acknowledgment may not re-petition under this part."); 25 C.F.R. § 83.3(f) (1994) ("Finally, groups that previously petitioned and were denied Federal acknowledgment under these regulations or under previous regulations in part 83 of this title, may not be acknowledged under these regulations."); 59 Fed. Reg. at 9285 ("Repetitioning by petitioners for which a final decision has become effective is prohibited by § 83.10(p)."), 9291 (noting the Department's position "that there should be an eventual end to the present administrative process" and that "petitioners who were denied went through several stages of review with multiple opportunities to develop and submit evidence"); *Miami Nation II*, 112 F. Supp. 2d at 759 ("The Miamis had no right to any reevaluation under the 1994 regulations, because the 1994 regulations don't apply to a petitioner that was denied acknowledgment under the 1978 regulations."). Thus, Plaintiff had no right to re-petition under Part 83 when the Department issued its final determination. The 2015 regulations did not change the restriction on re-petitioning, but simply declined to modify or eliminate the prohibition. 25 C.F.R. § 84.3(f) (2015).

Second, Plaintiff erroneously portrays the 2015 Final Rule as substantively lowering the bar for recognition. *See, e.g.*, Pl.'s Mem. at 3, 41 (describing the 2015 Final Rule's standards as "less demanding" and "less onerous"), 42 (stating without citation that the previous regulations set up "a system that BIA itself admits was designed to minimize the chances of obtaining recognition"). That is Plaintiff's own invention. The 2015 changes were not intended to lower

the standards for acknowledgment, but aimed at "making the process more transparent, promoting fairness and consistent implementation, and increasing timeliness and efficiency, while maintaining the integrity and substantive rigor of the process." 80 Fed. Reg. at 37,862. That is, the Department sought to codify its non-regulatory precedent and procedures into Part 83 to ensure that all petitioners knew what to expect during the process and to avoid precisely this type of allegation of inconsistency and unfair dealing.

None of these changes were designed to, or actually did, "weaken" the substantive requirements for a Part 83 petitioner. The 2015 Final Rule uses the same seven criteria as the 1994 regulations. The Department specifically responded to comments stating that the proposed rule would "weaken" the criteria by stating that "the final rule minimizes changes to the criteria" and "works to ensure consistent application across time." *Id.* at 37,865. "Given that the criteria have remained substantively unchanged since 1978, the amount and type of evidence that was sufficient to satisfy a particular criterion in 1980 remains sufficient today." *Id.* "It is the Department's intention to preserve the rigor and integrity of the process and the public's trust in the legitimacy of tribes that have successfully navigated the rigorous standards in Part 83." *Id.* at 37,869.

Third, Plaintiff incorrectly states that the Department itself acknowledged that the pre-2015 Part 83 process was "broken," insinuating that any pre-2015 negative determination is inherently illegitimate and must be overturned. *See, e.g.*, Pl.'s Mem. at 20, 24, 32, 35, 38. While the Department recognized that third parties had described the process in such negative terms, and made changes to address this criticism and to make the process more efficient and transparent, the Department itself never described Part 83 as "broken" or suggested that pre-2015 determinations are invalid. Further, even Plaintiff's cited criticism of the system as "broken"

went not to the substantive outcome of any given petition, but to the process itself, which was criticized for being "too slow (a petition can take decades to be decided), expensive, burdensome, inefficient, intrusive, less than transparent and unpredictable." 80 Fed. Reg. at 37,862. The 2015 Final Rule sought to make changes to the process that would allow for more timely decisions, more transparency and consistency in the process and standards, and to reduce the documentary burden of petitioning "while maintaining the existing rigor of the process." *Id.* It did not, as Plaintiff asserts, lower the standards for recognition or sweepingly disqualify pre-2015 determinations as violating the APA.

Finally, it is important to note what is and is not properly before this Court in an APA case. Plaintiff's Memorandum is replete with disputed factual allegations of Department wrongdoing and arguments that the Department erred as a matter of law in denying Plaintiff's original Part 83 petition. *See, e.g.*, Pl.'s Mem. at 4–26. The statute of limitations on bringing those types of challenges expired in January 2013, six years after the Department's denial of Plaintiff's petition became final for the agency. The sole, and narrow, question now before the Court is whether the Department exceeded its authority within the meaning of the APA when it declined to remove the 1994 re-petition ban in the 2015 Final Rule. Plaintiff may not re-litigate the merits of its Part 83 petition in this forum.

**A.    Defendants are entitled to summary judgment on Plaintiff's APA claim.**

Plaintiff's APA claim fails because the Department acted within its authority in promulgating the rule, including continuing the ban on re-petitioning. The agency is entitled to deference and this Court should find that the Department's regulations are based on a permissible construction of the statute.

**1.    The Department reasonably applied its broad authority over Indian affairs in prohibiting Part 83 re-petitions.**

In assessing whether the Department exceeded its delegated authority by not allowing denied groups from re-petitioning, the Court applies the familiar *Chevron* test. *See Am. Library Ass'n*, 406 F.3d at 698–99. Under *Chevron*, the Court must first determine "whether Congress has directly spoken to the precise question at issue." *City of Arlington*, 569 U.S. at 296. If "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" *Id.* (citation omitted).

Congress has granted the Department sweeping responsibility over matters pertaining to Indian tribes, and specifically delegated to the Department the authority "to determine which Indian groups exist as tribes." *See James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1137–39 (D.C. Cir. 1987) (citations omitted); 43 U.S.C. § 1457 (charging the Secretary of the Interior with the supervision of public business related to Indians); 25 U.S.C. § 2 (granting management of all Indian affairs to the Commissioner of Indian Affairs under the supervision of the Secretary of the Interior and regulations prescribed by the President); 25 U.S.C. § 9 (authorizing the President and Secretary of the Interior to prescribe regulations to carry out statutory responsibilities relating to Indian affairs); Federally Recognized Indian Tribe List Act of 1994 § 104, 25 U.S.C. § 5131 (directing the Secretary to "publish in the Federal Register a list of all Indian tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians"); 25 C.F.R. § 83.6(a) (implementing 25 U.S.C. § 5131). The list published in the Federal Register is ordinarily dispositive evidence of whether an Indian tribe is federally recognized. *See Cherokee Nation*, 117 F.3d at 1499 (noting that inclusion of a group of Indians on the list ordinarily suffices to

establish that group is a sovereign power and thus entitled to immunity from suit); *see also LaPier v. McCormick*, 986 F.2d 303, 305 (9th Cir. 1993) (finding that for purposes of 25 U.S.C. § 1321, the term "Indian" includes only those persons who are members of a tribe that the Bureau of Indian Affairs has formally acknowledged).

Courts have also held that the Department has special expertise in the determination of acknowledgment of Indian tribes and has authority to prescribe regulations for federal acknowledgment. *See James*, 824 F.2d at 1138–39; *United Tribe of Shawnee Indians v. United States*, 253 F.3d 543, 551 (10th Cir. 2001) (noting that "[d]etermining whether a group of Indians exists as a tribe is a matter requiring [the Department's] specialized agency expertise"); *Mdewakanton Sioux Indians of Minn. v. Zinke*, 264 F. Supp. 3d 116, 127 (D.D.C. 2017) (noting *James'* holding that the Part 83 regulations are "the Department's formal avenue to recognize groups as Indian tribes"); *Miami Nation I*, 887 F. Supp. at 1163 ("The court agrees with the *James* court's conclusion that the 1978 regulations have been promulgated pursuant to authority granted in 25 U.S.C. §§ 2 and 9."). In fact, when Plaintiff sued in 2001 to try to force the Department to put it on the list of federally recognized Indian tribes, the court cited *James* and held that because "Congress has allocated decision-making responsibility to the Executive branch" on the subject of acknowledgment, Plaintiff was required to exhaust its administrative remedies. *See* 217 F. Supp. 2d at 78–79. Thus, promulgating the Part 83 regulations falls within the Department's authority.

The statutes that grant the Department authority over Indians generally, and the acknowledgment process specifically, are silent on the question of whether re-petitioning should

be allowed.[4]   The Court must therefore evaluate "whether the agency's answer is based upon a permissible construction of the statute." *Bhd. of R.R. Signalmen v. Surface Transp. Bd.*, 638 F.3d 807, 811 (D.C. Cir. 2011) (quoting *Chevron*, 467 U.S. at 843). "At that stage, 'the agency's statutory interpretation is entitled to deference, as long as it is reasonable.'" *Nat'l Auto. Dealers Ass'n v. FTC*, 864 F. Supp. 2d 65, 73 (D.D.C. 2012) (quoting *Am. Library*, 406 F.3d at 699).

The Department's decision not to allow re-petitioning is reasonable and should be upheld. In 1994, when it first adopted the bar on re-petitioning, the Department determined that re-petitioning should not be allowed because "there should be an eventual end to the present administrative process," particularly because "petitioners who were denied went through several stages of review with multiple opportunities to develop and submit evidence." 59 Fed. Reg. at 9291. Allowing such groups to re-petition with new evidence "would burden the process for the numerous remaining petitioners." *Id.* If petitioners, like Plaintiff, have new evidence, they can seek legislative recognition. These same reasons apply in full force to the 2015 Final Rule's ban on re-petitioning as well.

The Department reasonably determined that the effect of allowing re-petitioning would be to slow down the process for petitioners who have not yet had their petitions heard, which would be contrary to the goal of the 2015 Final Rule. "Allowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review, and would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated

_____

[4] Indeed, there is no specific directive to Interior for any specific provision of the Part 83 regulations. *See Miami Nation I*, 887 F. Supp. at 1163 (noting that "[n]o statute explicitly authorizes the Secretary of the Interior to promulgate regulations concerning the acknowledgment of Indian Tribes; the Secretary relied upon his general statutory authority contained in 25 U.S.C. §§ 2 and 9 when promulgating the acknowledgment regulations," but rejecting unsuccessful petitioner's challenge to specific provisions of Part 83).

with re-petitions on the Department, and OFA in particular." 80 Fed. Reg. at 37,875. A major impetus for the 2015 Final Rule was reducing the length of time between filing a petition and reaching a decision. Without question, adding re-petitioners to the waiting list would increase the time for new petitions to be heard, defeating one of the aims of the 2015 Final Rule. The Department thus reasonably decided not to change the re-petitioning ban from the 1994 regulations.

Plaintiff attempts to characterize the Department's interest in administrative efficiency as reflecting the Department's own past failures or as an excuse to avoid an increased workload. *See, e.g.*, Pl.'s Mem. at 34–38. Not only is that false, but the Department also reasonably determined not to add a re-petitioning provision because the 2015 Final Rule did not substantially change the standards for acknowledgment, but aimed to provide for consistent results between petitions. "The final rule promotes consistency, expressly providing that evidence or methodology that was sufficient to satisfy any particular criterion in a previous positive decision on that criterion will be sufficient to satisfy the criterion for a present petitioner." 80 Fed. Reg. at 37,875. In the Proposed Rule, as well, which would have allowed a limited opportunity for re-petitioning, the Department noted that "the changes to the regulations are generally intended to provide uniformity based on previous decisions." 79 Fed. Reg. at 30,767. This is consistent with the Department's consistent position when promulgating the 2015 Final Rule that the Part 83 standards were not being substantially changed and instead the changes provided a faster, more efficient, and more transparent process. *See, e.g.*, 80 Fed. Reg. at 37,862–63, 37,876. Thus, the Department acted reasonably by not allowing groups that already had several opportunities to provide evidence to get back in line because the standards have not changed and the results should be the same. That is, the Department's interest in

administrative efficiency reflects that the Department specifically designed the 2015 Final Rule to avoid changes in previous Part 83 decisions, thus making any re-petition inherently unnecessary.

Plaintiff's own case perfectly demonstrates this point. Neither of the 2015 Final Rule's two substantive changes to the Part 83 regulations — specifically, the changes to the criteria contained in 25 C.F.R. § 83.11(a) and (b) — would benefit Plaintiff. First, as Plaintiff noted in its Memorandum, the Department already determined that Plaintiff met the requirements of § 83.11(a), relating to identification of the petitioner as an Indian entity, but failed on other criteria. Pl.'s Mem. at 16–17. Therefore, any changes to that criterion would not change the Department's determination as to Plaintiff's petition. Second, the substantive change to 25 C.F.R. § 83.11(b) concerns how the Department counts marriages among members for the purpose of determining whether a community exists among members. *Compare* § 83.7(b)(2)(ii) (1994), *and* § 83.11(b)(ii) (2015). In reaching a negative determination on that criterion in its Final Determination, the Department conducted an analysis that counted members, not marriages, for the purpose of evaluating community. Final Determination at 64–65 (found at www.bia.gov/as-ia/ofa/101-burtlk-mi (last visited December 14, 2018). The Department concluded that, whether counting marriages or members, Plaintiff's marriage rates did not satisfy criterion (b). *Id.* at 67.

Because the only two substantive changes to the criteria are inapplicable to Plaintiff, allowing re-petitioning would permit Plaintiff, and similarly situated petitioners, to submit information on an *ad hoc* and ongoing basis while prohibiting the agency from finalizing any

Part 83 determination.[5]   Indeed, given Plaintiff's apparent argument that Part 83 petitioners should be able to re-petition in perpetuity, it is unclear at what point any Department denial of a petition would constitute a "final agency action" within the meaning of either Part 83 or the APA generally.   An open-ended process that affords no agency finality whatsoever is far more arbitrary than the current Part 83 regulations, which provide petitioners (and provided Plaintiff) multiple avenues through which to submit information prior to a final agency denial of a Part 83 petition.

This Court can also take into account that the Part 83 regulations have contained a ban on re-petitioning since 1994 and Congress has not acted to remove the ban. "While this Court always exercises caution when construing legislative silence in the form of Congress' failure to enact a statute, it cannot ignore the evidence indicating that Congress is aware of the agency's regulations . . . requirement, but has nevertheless failed to act." *United Houma Nation v. Babbitt*, No. CIV. A. 96-2095 (JHG), 1997 WL 403425, at *8 (D.D.C. July 8, 1997).  Here, "Congress was 'obviously aware' of the policy in question and consciously acted or did not act in response to that policy."   *Inner City Broad. Corp. v. Sanders*, 733 F.2d 154, 160 (D.C. Cir. 1984); *see also Planned Parenthood Federation of Am., Inc. v. Heckler*, 712 F.2d 650, 660 (D.C. Cir. 1983); *Kay v. FCC*, 443 F.2d 638, 646 (D.C. Cir. 1970).

Plaintiff also claims that the Department's reliance on general grants of congressional authority to entreat with Indians, such as 25 U.S.C. §§ 2, 9, and 5131, and 43 U.S.C. § 1457, represent an "eleventh hour effort by Defendants to preserve the prohibition in Section 83.4(d)

---

[5] Plaintiff claims that if allowed to re-petition, it would now satisfy the 2015 version of Part 83. Pl.'s Mem. at 25–27. Not only is this argument wholly speculative, unsupported by the Administrative Record, and beyond the scope of Plaintiff's APA challenge, but it is also predicated on Plaintiff's erroneous assumption that the 2015 Final Rule is easier to satisfy than the 1994 Final Rule.

by relying on a[] new or post hoc justification." Pl.'s Mem. at 32. It is not clear what portion of this argument Plaintiff believes to be "new" or "post hoc" given that the Department cited each such statute in the "Legislative Authority" section of the 2015 Final Rule, 80 Fed. Reg. at 37,885, and at least one court has specifically rejected an APA challenge alleging that the Department exceeded its authority under these very statutes in promulgating Part 83 regulations. *See Miami Nation*, 887 F. Supp. at 1163. There is nothing "post hoc" about the Department's consistent reliance on its Indian law authorities as supporting Part 83.

**2.      Plaintiff has failed to demonstrate that the re-petition ban exceeds agency authority or is otherwise arbitrary and capricious.**

As set out above, the Department was well within its authority to maintain the 1994 re-petition ban in the 2015 Final Rule. Plaintiff has failed to demonstrate otherwise.

First, Plaintiff's reliance on the Indian canons of construction as support for its argument is misplaced. The D.C. Circuit has held that the Indian canons derive "from principles of equitable obligations and normative rules of behavior, applicable to the trust relationship between the United States and the Native American people." *Cobell v. Norton*, 240 F.3d 1081, 1101 (D.C. Cir. 2001) (citation and internal quotations omitted). Plaintiff is not federally recognized and thus the United States does not have a trust responsibility to Plaintiff. It is also not clear whether removing the ban on re-petitioning would favor Indians, another pre-requisite for the canons. *See Cabazon Band of Mission Indians v. Nat'l Indian Gaming Comm'n*, 14 F.3d 633, 637 (D.C. Cir. 1994) ("Which construction of the [Indian Gaming Regulatory] Act favors the Indians, the one including electronic pull-tab games under class II gaming or the one placing this version of the game under the more restrictive category of class III?"). Moreover, the Indian canons of construction do not apply when the interpretation might favor one group of Indians to the detriment of other groups of Indians. *Rancheria v. Jewell*, 776 F.3d 706, 713 (9th Cir. 2015).

And even if they did apply, "an agency's legal authority to interpret a statute appears to trump any practice of construing ambiguous statutory provisions in favor of Indians." *Id.*

In any event, the canons are inapplicable here because Plaintiff has not cited any ambiguous statutory provision applicable to the 2015 Final Rule. *See id.* ("When the statutory language is clear, as it is here, the canon may not be employed."); *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 383 F. Supp. 2d 123, 145 (D.D.C. 2005), *aff'd*, 466 F.3d 134 (D.C. Cir. 2006) (stating that "the canon only has a role in the interpretation of an ambiguous statute"). "The canon of construction regarding the resolution of ambiguities in favor of Indians, however, does not permit reliance on ambiguities that do not exist; nor does it permit disregard of the clearly expressed intent of Congress." *S. Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986). In fact, Plaintiff argues repeatedly that the relevant statutory authorities in this case are clear on their face. Pl.'s Mem. at 28–32. Given that there are no statutes addressing criteria for federal recognition, Plaintiff cannot cite to any ambiguous provision, even if the canons did apply.

Finally, Plaintiff characterizes the re-petition ban as reflecting "a new 'one bite at the apple' rule to reduce its workload by terminating the ability of an entire class of tribes to respond to the agency's concern about the adequacy of the facts first presented." Pl.'s Mem. at 38. This is inaccurate in at least four ways. First, as noted, the re-petition ban is not "new" and has been codified in Part 83 since 1994. Second, the re-petition ban is not designed simply to reduce agency workload, but to further the agency's goals in administering the Part 83 process and to be fair to those groups who have not yet had their petitions decided. Third, and also as noted, Plaintiff, and all Part 83 petitioners, may "respond to the agency's concerns about the adequacy of the facts first presented" by (1) availing itself of the response and technical assistance period

that the regulations provide after the publication of the Proposed Rule; (2) seeking reconsideration from the IBIA or OHA (depending on whether petitioner proceeded under the 1994 or 2015 version of Part 83); (3) appealing a negative decision on the merits to federal court; or (4) seeking congressional recognition. Plaintiff simply declined to take advantage of any such option. Finally, Plaintiff cites no authority for a rule that agencies must allow multiple (or indefinite) "bites at the apple" after an unsuccessful petition for federal benefits. *Cf. Economou v. Caldera*, 286 F.3d 144, 150 (2d Cir. 2002) ("This Court will not bend the plain language of the regulations to allow parties to browse at will through multiple administrative reviews in search of a more favorable outcome."); *Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1174 (9th Cir. 2001) ("Thus, another hearing is denied only to those aliens who have already been excluded, deported, or removed after having been given one full and fair hearing, including the right to judicial review of that hearing. To preclude a second bite at the apple after an illegal reentry does not offend due process.").

In conclusion, the Department has broad authority over Indian matters, including determining which groups should be federally recognized. The Department is entitled to deference in its determination that re-petitioning is contrary to the goals of the Part 83 process and should not be allowed. Nothing in Plaintiff's Memorandum undercuts either premise. The Court should find that the Department's decision not to allow re-petitioning is reasonable because it would be contrary to the goal of making the Part 83 process more timely and because the standards for recognition did not substantially change.

**B.**     **The Department is entitled to summary judgment on Plaintiff's due process claim.**

Plaintiff next alleges that the re-petition ban violates the Due Process Clause of the Constitution. *See* Pl.'s Mem. at 38–40. "A 'threshold requirement of a due process claim' is 'that the government has interfered with a cognizable liberty or property interest.'" *Muwekma*

*Ohlone Tribe v. Salazar*, 708 F.3d 209, 219–20 (D.C. Cir. 2013) (quoting *Hettinga v. United States,* 677 F.3d 471, 479–80 (D.C. Cir. 2012) (per curiam)).  Plaintiff fails to identify a cognizable liberty or property interest in re-petitioning under Part 83, which is fatal to its claim.

> ### 1.  Plaintiff does not have a protected due process interest in re-petitioning under Part 83.

Plaintiff argues that it "has a protected interest in being federally recognized" and the benefits that stem from federal recognition.  *See* Pl.'s Mem. at 40.  But, due process "is a safeguard of the security of interests that a person has *already acquired* in specific benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) (emphasis added).  Thus, "applicants for benefits, as distinct from those already receiving them, [do not] have a legitimate claim of entitlement protected by the Due Process Clause." *Lyng v. Payne,* 476 U.S. 926, 942 (1986); *see also Muwekma*, 708 F.3d at 219.  Here, Plaintiff does not show that it has a legitimate claim of entitlement to government benefits because the Department's denial of Plaintiff's Part 83 petition did not terminate any pre-existing federal benefits to which Plaintiff was entitled.[6]  Notably, Plaintiff never had the right to re-petition because the regulations forbid re-petitioning when the Department denied Plaintiff's petition in 2006.

Several courts have found that the acknowledgment regulations do not violate due process.  In *Muwekma*, the D.C. Circuit held that a petitioner for federal acknowledgment did not have a protected due process interest because it was not receiving government services or

---

[6] Plaintiff's First Amended Complaint and Memorandum both allege that Plaintiff has historically received a host of federal benefits, which Plaintiff claims reflect longstanding federal acknowledgment of the Burt Lake Band as a recognized tribe.  Even assuming *arguendo* that the Burt Lake Band as presently constituted has received some federal benefits, it has never been recognized under the Part 83 process or otherwise appeared on the List of federally recognized Indian tribes.  Any benefits it might have received are therefore untethered to Plaintiff's claimed tribal status and do not afford Plaintiff protected liberty or property interests.

benefits when it applied for acknowledgment.  708 F.3d at 219.  "[W]hatever due process interest Muwekma might have had as a previously-recognized tribe disappeared because that previously-recognized tribe no longer exists."  *Id.* (citing *Miami Nation of Indians of Ind., Inc. v. U.S. Dep't of the Interior*, 255 F.3d 342, 346 (7th Cir. 2001)).  Similarly, in *Evans v. Salazar*, No. C08-0372-JCC, 2011 WL 1219228 (W.D. Wash. Mar. 31, 2011), the Court held that a petitioning group did not have a valid due process claim because it could not show that any of its members were receiving "individual benefits that were terminated due to a lack of tribal status."  *Id.* at *13. "A government benefit is not a protected property interest unless the plaintiff has a 'legitimate claim of entitlement to it.'"  *Id.* (quoting *Bd. of Regents*, 408 U.S. at 577)

The *Miami Nation I* court also addressed this issue and found that Part 83 does not violate due process because the regulations do not create a legitimate claim of entitlement protected by due process.  887 F. Supp. at 1174–75.  In particular, the court noted that the Department has discretion in determining whether the Part 83 criteria have been met, so the regulations cannot create a protected right.  *Id.* at 1175.  Similarly, here, the 2015 Final Rule explicitly prohibits re-petitioning, and therefore did not create a constitutionally-protected right to re-petition.  *See Miami Nation II*, 112 F. Supp. 2d at 759 (noting that group "had no right to any reevaluation under the 1994 regulations, because the 1994 regulations don't apply to a petitioner that was denied acknowledgment under the 1978 regulations").  Plaintiff identifies no other source of a protected right and Defendants are therefore entitled to summary judgment on Plaintiff's due process claim.

### 2.    Plaintiff does not have a valid First Amendment claim.

Plaintiff asserts that the ban on re-petitioning "improperly restricts the Band's ability to seek redress of a grievance under the Petition Clause" of the First Amendment.  Pl.'s Mem. at 39.  Plaintiff's Complaint does not allege a First Amendment claim, and this argument should be

dismissed for that reason alone. *See Franks v. Salazar*, 816 F. Supp. 2d 49, 58 n.5 (D.D.C. 2011) ("[P]laintiffs cannot use their summary judgment briefing to press claims not raised in their amended complaint.").

Even if evaluated on the merits, "the Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011). But Plaintiff offers no authority showing that the Petition Clause applies in this situation, where a group seeking government benefits requests an unlimited right to petition for that benefit. Indeed, Plaintiff seeks not to raise a grievance with the government, but to show that it is entitled to receive benefits and to make that showing in perpetuity before a federal agency. The Petition Clause thus is not at issue here.

Even if the Petition Clause was somehow relevant, courts have recognized that this right is subject to limitations when necessary "to maintain the integrity of a basic governmental process." *Ryan, LLC v. Lew*, 934 F. Supp. 2d 159, 173 (D.D.C. 2013) (citing *United States v. Harriss*, 347 U.S. 612, 625 (1954)); *U.S. Postal Serv. v. Hustler Magazine, Inc.*, 630 F. Supp. 867, 872 (D.D.C. 1986) ("While the right to petition Government is among the most precious of the liberties safeguarded by the Bill of Rights, we recognize that this right, like many rights, is not absolute but can be subject to reasonable limitations." (internal quotation and citation omitted)). Similarly, courts employ rules of res judicata and issue preclusion that prevent parties from repeatedly relitigating the same claims. *See Davenport v. Djourabchi*, 316 F. Supp. 3d 58, 60 (D.D.C. 2018) ("The doctrine of *res judicata* bars parties 'from relitigating issues that were or could have been raised' in a previous action." (quoting *Allen v. McCurry*, 449 U.S. 90, 94

(1980))).  The Department's ban on re-petitioning is no different and is aimed at the government objective of ensuring timely resolution of acknowledgment petitions.

Plaintiff further mischaracterizes its First Amendment rights by suggesting that it has been unlawfully silenced from engaging with the United States concerning its petition.  Plaintiff filed its petition with the Department and submitted evidence to the Department supporting its petition.  Plaintiff provided responses to Defendants' proposed finding on Plaintiff's petition, and had a right to appeal the Defendants' denial of Plaintiff's petition to either the IBIA or federal district court.  Plaintiff chose not to avail itself of the appeal procedures, when it could have responded to the Department's findings.  Plaintiff received appropriate due process and in no way suffered any First Amendment violation.  *See, e.g.*, *O'Connor v. County of Clackamas*, No. 3:11-cv-1297-SI, 2013 WL 3818143, at *25 (D. Or. July 22, 2013) ("The mere fact that Plaintiffs did not get the result they wanted from the hearing is not proof of a First Amendment [violation].") (citing *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 464-65 (1979)).  Plaintiff can also "petition" the government by seeking legislative recognition.  *See* 59 Fed. Reg. at 9291 ("Denied petitioners still have the opportunity to seek legislative recognition if substantial new evidence develops").  Taken as a whole, Plaintiff's Petition Clause challenge to the re-petition ban cannot succeed.

The Court should grant summary judgment in favor of the Department on Plaintiff's due process claim.

**C.     The 2015 Final Rule does not violate Equal Protection.**

Finally, Plaintiff claims that the re-petition ban violates the Equal Protection Clause of the Constitution.  Plaintiff alleges that under the 2015 Final Rule, Plaintiff is "forever prohibited from supplementing its petition, re-petitioning for recognition, or petitioning for reaffirmation," whereas "tribes that have not yet petitioned for federal recognition or not yet received decisions

on petitions pending in 2015 will have their claims resolved under the no-longer 'broken' process and its less demanding standards." Pl.'s Mem. at 41. This claim fails for several reasons, and Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

At the outset, Defendants note again that the entirety of Plaintiff's equal protection claim is predicated on two false premises: first, that the Department first promulgated the re-petition ban in the 2015 Final Rule (as opposed to the 1994 Final Rule), and second, that the 2015 version of Part 83 is substantively easier to satisfy than the 1994 version (as noted, not only is that not true, but Plaintiff would fail under either version of Part 83). Pl.'s Mem. at 40–44. Plaintiff argues that it was subjected to a "broken" process that the Department deliberately designed to "make it harder for tribes to obtain recognition that the post-2015 process." *Id.* at 43. Neither premise is supported by the 2015 Final Rule and Plaintiff's equal protection claim facially fails.

And in any event, the re-petition ban does not violate equal protection. As Plaintiff notes, because the re-petition "does not 'target a suspect class or burden a fundamental right,' the relevant level of scrutiny is rational basis." Pl.'s Mem. at 40 (citing *Tucker v. Branker*, 142 F.3d 1294, 1300 (D.C. Cir. 1998)). Rational-basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993) (citation omitted). There is a strong presumption of validity accorded government classifications not involving fundamental rights or suspect classes, and the burden is on Plaintiff to prove that there is no reasonably conceivable basis to support the classification. *Steffan v. Perry*, 41 F.3d 677, 684–85 (D.C. Cir. 1994). The government also "has no obligation to produce evidence to sustain the rationality of a [regulatory] classification." *Id.* at 684 (citation omitted). "This presumption of rationality does not apply merely to congressional or state legislative schemes,

but extends to administrative regulatory action as well . . . ." *Id.* at 684–85 (citing *Pac. States Box & Basket Co. v. White*, 296 U.S. 176, 186 (1935)).

Plaintiff has not identified any way in which the re-petition ban fails to satisfy rational basis review. First, it is not clear that Plaintiff is being treated differently than "those who appear similarly situated." Plaintiff has already gone through the Part 83 process, and was not treated differently than other group that went through the process and had its petition denied. Plaintiff claims to be identically situated to Huron Potawatomi, Grand Traverse Band of Ottawa and Chippewa Indians, and the Gun Lake Tribe, from which Plaintiff extrapolates an equal protection violation. Pl.'s Mem. at 44-45. But again, this argument is rooted in unsubstantiated assertions that go to the merits of Plaintiff's Part 83 petition. This is a claim for which the statute of limitations has run, and which Plaintiff cannot support as a matter of law.

But, to the extent that Plaintiff and other groups that have received a final determination are being treated differently than groups that have not yet gone through the Part 83 process by not being able to re-petition, the difference has a rational basis, as discussed thoroughly above. Thus, the Department acted reasonably in not allowing previously-denied petitioners to use Department time and resources to take another bite at the apple, particularly when there are other groups waiting to have their petitions considered and decided for the first time.

## V.  CONCLUSION

The Department revised the Part 83 regulations to make them more transparent, and to ensure a quicker and more efficient process. The Department acted within the scope of its authority when it issued the 2015 Rule, including the ban on re-petitioning, and it is entitled to *Chevron* deference because its interpretation of its authority is a permissible construction. In addition, Plaintiff does not have a protected liberty or property interest, and has received all the process it is due. Plaintiff also does not have a valid First Amendment claim. Finally, Plaintiff

is not being treated differently than those who appear to be similarly situated, and there is a rational basis to treat it differently than groups who have not yet had their acknowledgment petitions determined.  For the foregoing reasons, the Department respectfully requests that this Court enter summary judgment its favor on Plaintiff's remaining claims.

Respectfully submitted this 14th day of December, 2018.

JEAN E. WILLIAMS
Deputy Assistant Attorney General
Environment & Natural Resources Division

*s/ Devon Lehman McCune*
DEVON LEHMAN McCUNE
Senior Attorney
U.S. Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, CO 80202
Tel: (303) 844-1487
Fax: (303) 844-1350
devon.mccune@usdoj.gov

OF COUNSEL
Samuel E. Ennis
John-Michael Partesotti
United States Department of the Interior
Office of the Solicitor

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2018, a copy of the foregoing was filed through the

Court's CM/ECF management system and electronically served on counsel of record.


*/s/ Devon Lehman McCune*
Devon Lehman McCune
Senior Attorney