# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BURT LAKE BAND OF OTTAWA AND CHIPPEWA INDIANS, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| DAVID BERNHARDT, *et al.,* | ) ) |
| Defendants. | ) ) ) |

Civil Action No. 17-0038 (ABJ)

## MEMORANDUM OPINION

Plaintiff Burt Lake Band of Ottawa and Chippewa Indians ("the Band") is an Indian Tribe that has sought federal recognition since at least 1935. It has brought this action against the Secretary of the Department of the Interior (the "Department"), David Bernhardt,[1] and the Assistant Secretary for Indian Affairs for the Department of the Interior, Tara Sweeny, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 500 *et seq.*, and the Due Process and Equal Protection Clauses of the Fifth Amendment of the Constitution. *See generally* Amended Complaint [Dkt. # 11] ("Am. Compl.").

In 2015, the Department initiated a rule making procedure to consider making changes to its Part 83 regulation, which sets forth the procedures through which Tribes can gain federal recognition. The Department ultimately decided against an amendment that would have allowed Tribes who were denied recognition under the pre-2015 procedures an opportunity to re-petition in limited circumstances, and this lawsuit challenges that decision. *See* Am. Compl.

---

1    David Bernhardt, who succeeded Ryan Zinke as Secretary of the Interior, is substituted as defendant pursuant to Federal Rule of Civil Procedure 25(d).

On July 14, 2017, defendants moved to dismiss all six counts in the amended complaint. After plaintiff voluntarily dismissed one count, the Court granted defendants' motion to dismiss in part, and denied it in part. *See* Mem. Op. [Dkt. # 20].

Plaintiff has now moved for summary judgment on the remaining claims, Counts IV, V, and VI of the complaint. Pl.'s Mot. for Summ. J. [Dkt. # 27]; Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot. for Summ. J. [Dkt. # 27-1] ("Pl.'s Mem."). Defendants opposed that motion and filed a cross-motion for summary judgment. Defs.' Cross-Mot. for Summ. J. [Dkt. # 29]; Defs.' Mem. of P. & A. in Supp. of Defs.' Cross-Mot. for Summ J. [Dkt. # 29] ("Defs.' Cross-Mem."). The matter is fully briefed, *see* Pl.'s Opp. to Defs.' Cross-Mot. & Reply in Supp. of Pl.'s Mot. for Summ J. [Dkt. # 32] ("Pl.'s Reply"), and Defs.' Reply in Supp. of Cross-Mot. [Dkt. # 34] ("Defs.' Cross-Reply"). A Joint Appendix of the Administrative Record was filed on the docket on March 28, 2019. Admin. Record [Dkt. # 35].[2]

Upon full review of the record, the Court finds that the agency's decision was arbitrary and capricious, and it will grant plaintiff's motion for summary judgment on the APA claim (Count IV) and remand the matter to the agency. Under those circumstances, it is unnecessary to reach the constitutional claims (Counts V and VI).

---

2    The Court notes that plaintiff also filed a Notice of Supplemental Authority [Dkt. # 38] on January 27, 2020, directing the Court to *Chinook Indian Nation v. Bernhardt.*, 2020 WL 128563 (W.D. Wa. Jan. 10, 2020), a recent case that addresses similar issues to those presented in the instant matter. The Court has read that decision and finds it to be well-reasoned and persuasive.

# BACKGROUND

## I.      Statutory Background[3]

The history of tribal recognition in the United States is as complicated as it is long.  Only the small portion of that history that is relevant to this case will be set out here.

In 1934, Congress codified its treatment of Indian Tribes for the first time by enacting the Indian Recognition Act ("IRA").  25 U.S.C. § 479.  The IRA defined the term "Indian" to "include all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction."  *Id*.  After passing the IRA, recognition of Tribes by the federal government took place in an *ad hoc* manner, with the Bureau of Indian Affairs ("BIA"), part of the Department of Interior, receiving and reviewing petitions on a case-by-case basis.  *See Mackinac Tribe v. Jewell*, 829 F.3d 754, 756 (D.C. Cir. 2016), citing *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 211 (D.C. Cir. 2013).

In 1978, the Department promulgated a formal procedure for recognizing Indian Tribes, called the Part 83 process.  *See generally* 25 C.F.R. § 83 *et seq*.  "The Part 83 process is 'intended to apply to groups which can establish a substantially continuous tribal existence and which have functioned as autonomous entities throughout history until the present.'"  *Muwekma*, 708 F.3d at 211, quoting 25 C.F.R. § 83.3(a).  To be recognized, petitioners must satisfy seven criteria by submitting thorough explanations and supporting documentation.  *See* 25 C.F.R. § 83.11.

The Part 83 regulations have been amended twice, once in 1994 and again in 2015.  The 1994 version was the first to deny previously-denied Tribes any opportunity to re-petition the Department for recognition.  *See* 25 C.F.R. § 83.3(f) (1994).  In 2014, the Department proposed

---

3      A more in-depth review of the history of the Part 83 regulation is undertaken in Section II.A *infra*.

a second round of amendments, including a provision that would allow some previously-denied Tribes to re-petition under a limited set of circumstances. *See* Fed. Acknowledgment of Am. Indian Tribes, 79 Fed. Reg. at 30767 (proposed May 29, 2014) ("Proposed Rule"). In 2015, after an extensive notice and comment period, the Department published the Final Rule, Federal Acknowledgment of American Indian Tribes, 80 Fed. Reg at 37862 (July 1, 2015) ("Final Rule") which contained, among other changes, revised criteria for tribal recognition. *See, e.g.*, *id*. at 37863, 37870, 37872. But the 2015 Final Rule did not include the proposed provision allowing for limited re-petitioning. *Id*. at 37875.

## II.     Factual Background

In 1935, the Burt Lake Band's ancestors first petitioned the Bureau of Indian Affairs to be recognized under the Indian Recognition Act of 1934. Pl.'s Mem. at 14. The Department never issued a final decision on that petition. Pl.'s Mem. at 14. On September 6, 1985, the Band applied for federal recognition under the Part 83 Process. Pl.'s Mem. at 15. It took twenty years for the agency to rule, and the BIA rejected the Band's petition in 2006. *See* Final Determination for the Burt Lake Band of Ottawa and Chippewa Indians, Inc., 71 Fed. Reg. 57995 (Oct. 2, 2006).

This case does not challenge the unconscionable delay or the denial of that petition – the date to do so has long since passed. Instead, this case challenges the agency's rulemaking in 2014–2015, specifically the agency's decision not to include the proposed re-petitioning provision in its Final Rule.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and evidence show that "there is no genuine dispute as to any material fact and [that] the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). In cases arising under the Administrative Procedure Act, though, the agency's role is to resolve factual issues and arrive at a decision that is supported by the administrative record, and the court's role is to "determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985), citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971); *see also Richards v. INS*, 554 F.2d 1173, 1177 n.28 (D.C. Cir. 1977).

## ANALYSIS

Under the APA, a court must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), in excess of statutory authority, *id.* § 706(2)(C), or "without observance of procedure required by law," *id.* § 706(2)(D). However, the scope of review is narrow. *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The agency's decision is presumed to be valid, *see Citizens to Preserve Overton Park*, 401 U.S. at 415, and the court must not "substitute its judgment for that of the agency." *State Farm*, 463 U.S. at 43. A court must be satisfied, though, that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a rational connection between the facts found and the choice made." *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006) (citations omitted) (internal quotation marks omitted).

In reviewing an agency's interpretation of a statute, courts use the two-step analysis outlined in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). Step one involves determining whether Congress has spoken

directly to the precise question at issue. If it has, "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress," and that is the end of the matter. *Id.*; *Nat'l Treasury Emps. Union v. Fed. Labor Relations Auth.*, 392 F.3d 498, 500 (D.C. Cir. 2004). If the statute is silent or ambiguous on the question, *Chevron* instructs the Court to go on to a second step and determine "whether the agency's answer is based on a permissible construction of the statute." 467 U.S. at 843. An agency's interpretation will warrant deference if it is reasonable. *Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 702 (1991).

Plaintiff contends that the ban on re-petitioning in the Final Rule is a violation of the APA for two reasons. First, it argues that the agency exceeded its statutory authority by promulgating a rule that forecloses the possibility of re-petitioning. Pl.'s Mem. at 28. Second, it maintains that even if the agency acted within the scope of its authority, the Rule is arbitrary and capricious because the Department: failed to consider important aspects of the problem, including fairness concerns regarding previously-denied Tribes' rights to re-petition under the new criteria; promulgated a rule that "runs counter to the evidence before the agency;" and relied on impermissible factors by basing its decision on "efficiency" and "workload" concerns. Pl.'s Mem. at 34–36.

The Court finds that while the Department acted within its authority when it promulgated the updated Part 83 regulation, including the ban on re-petitioning, the record does not support the agency's limited justifications for the ban, and so it is arbitrary and capricious.

## I. The Department did not act outside its statutory authority by maintaining the prohibition on re-petitioning in the Final Rule.

Plaintiff contends that the agency's "decision to ban all previously-denied groups from re-petitioning under the revised Part 83 process exceeds its statutory authority" for two reasons: because the Department has never been delegated the authority to ban re-petitioning, Pl.'s Mem.

at 28–32l Pl.'s Reply at 1, and because the agency's decision to maintain the ban "squarely contradicts the intent of Congress." Pl.'s Reply at 1. The agency contends that its ban on repetitioning falls within its broad authority over Indian matters, and that it "goes hand-in-hand" with its authority to determine which Indian groups to recognize as Indian Tribes. Defs.' Cross-Mem. at 17–23; Defs.'s Cross-Reply at 3.

## A. The *Chevron* Analysis

The D.C. Circuit has explained:

> Under the first step of *Chevron*, the reviewing court "must first exhaust the traditional tools of statutory construction to determine whether Congress has spoken to the precise question at issue." The traditional tools include examination of the statute's text, legislative history, and structure, as well as its purpose.

*Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997), quoting *Nat. Res. Def. Council v. Browner*, 57 F.3d 1122, 1125 (D.C. Cir. 1995).

The court is required to utilize these methods to determine whether Congress has "unambiguously foreclosed the agency's statutory interpretation." *Catawba Cty. v. EPA*, 571 F.3d 20, 35 (D.C. Cir. 2009).

> Congress may have done so in one of two ways: either by prescribing a precise course of conduct other than the one chosen by the agency, or by granting the agency a range of interpretive discretion that the agency has clearly exceeded . . . . And if the agency has either violated Congress's precise instructions or exceeded the statute's clear boundaries then, as *Chevron* puts it, 'that is the end of the matter' – the agency's interpretation is unlawful.

*Vill. of Barrington v. Surface Transp. Bd.*, 636 F.3d 650, 659–60 (D.C. Cir. 2011).

The burden is on a plaintiff challenging the agency interpretation to "do more than offer a reasonable or, even the best, interpretation" of the statute; plaintiff must instead show "that the

statute *unambiguously* forecloses the [agency's] interpretation." *Vill. of Barrington*, 636 F.3d at 661. In other words, if a court determines "that statutory ambiguity has left the agency with a range of possibilities and that the agency's interpretation falls *within* that range, then the agency will have survived *Chevron* step one." *Vill. of Barrington*, 636 F.3d at 660.

  **B. Congress has delegated broad authority to the Secretary of the Interior to promulgate regulations concerning the acknowledgment of Indian Tribes, including the authority to regulate how Tribes may be recognized.**

  Congress has consistently granted the Secretary of Interior authority over Indian matters under 43 U.S.C. § 1457. It states that the "Secretary of the Interior is charged with the supervision of public business relating to . . . Indians." *Id.* And Under 25 U.S.C. § 2, the Commissioner of Indian Affairs, who operates under the direction of the Secretary of Interior, is charged with "the management of all Indian affairs and of all matters arising out of Indian relations."

  The 2015 Final Rule includes a one-paragraph section titled "legislative authority," which invokes all of these statutes. 80 Fed. Reg. 37885. According to defendants, the Final Rule was issued in accordance with the Secretary's authority to recognize the existence of an Indian Tribe, Defs.' Cross-Mem. at 17, and his general statutory authority under 25 U.S.C. §§ 2 and 9 to authorize the agency to promulgate regulations concerning the process for acknowledging Tribes. Defs.' Cross-Reply at 3, citing *Miami Nation of Indians of Ind., Inc. v. Babbitt*, 887 F. Supp. 1158, 1163 (N.D. Ind. 1995). Since the re-petitioning rule is part and parcel of the acknowledgment process, and the Secretary has authority over the "management of all Indian

affairs," defendants contend that the re-petitioning rule falls squarely within its authority. Defs.' Cross-Mem. at 3.[4]

Plaintiff concedes that defendants have the authority to determine which Indian groups can be recognized as Tribes: "Congress has clearly provided [the Department] and BIA with the authority to create and implement a Part 83 process." Pl.'s Reply at 8. Although this authority allows the agency "to determine *how* to acknowledge or deny Indian groups," Pl.'s Reply at 8 (emphasis in original), plaintiff insists that the re-petitioning ban does not fall within the scope of that authority because it "squarely contradicts Congressional intent," Pl.'s Reply. at 13, and "BIA can cite no authority which explicitly grants it the authority to prohibit a Tribe from petitioning for recognition or re-petitioning when its initial submission was deemed inadequate." Pl.'s Mem. at 28. According to plaintiff, the laws that empower the Secretary are "clearly and unambiguously intended to *benefit* and *protect* Indian peoples and Tribes," so a provision that disadvantages them exceeds the scope of the agency's authority. Pl.'s Reply at 14, citing 25 U.S.C. § 5302 (Indian Self-Determination and Education Assistance Act ("ISDEAA"); 25 U.S.C. § 13 (Snyder Act); 25 U.S.C. § 185; 25 U.S.C. § 305(a); 25 U.S.C. § 2000.

Plaintiff notes that "[e]ven the Preamble to the revised Part 83 regulations that DOI implemented in 2015 state that they were made '*for the benefit of Indian tribes*.'" Pl.'s Reply at 15, quoting 25 C.F.R. § 83.2. Since, according to plaintiff, the unifying goal of these statutes is to promote self-determination, and federal recognition is central to achieving self-determination, "the draconian decision to adopt an absolute prohibition on re-petitioning under any

---

4      In support of its position, defendants also cite 25 U.S.C. § 5131, which provides that the "Secretary shall publish in the Federal Register a list of all Indian Tribes which the Secretary recognizes to be eligible for the special programs and services provided by the United States to Indians because of their status as Indians."

circumstances" is "contrary to Congressional policy," and therefore in excess of the Department's statutory authority. Pl.'s Reply at 16.

The Court finds that Section 83(d) falls well within the Department's authority, including in particular, "the management of *all* Indian affairs and *all* matters arising of Indian relations." 25 U.S.C. § 2 (emphasis added). Thus, the Rule does not fail at *Chevron* step one, and it is based on a reasonable construction of the statutory language for purposes of *Chevron* step two. This conclusion is consistent with binding Circuit precedent, which holds that the Department's power to recognize encompasses the power to create regulations to establish the manner through which that is accomplished. *See, e.g., James v. U.S. Dep't of Health and Human Servs.*, 842 F.2d 1132, 1138 (D.C. Cir. 1987) ("Congress has specifically authorized the Executive Branch to prescribe regulations concerning Indian affairs and relations. Regulations establishing procedures for federal recognition . . . certainly come within the area of Indian affairs and relations.").

Furthermore, plaintiff's contention that the ban runs "contrary to Congress's stated policy and the purpose of the regulations," to help establish "a meaningful Indian self-determination policy," Pl.'s Mem. at 31, and the Rule's commitment to "implement Federal statutes for the benefit of Indian Tribes," Pl.'s Mem. at 32 (quoting 25 C.F.R. § 83.2), is undermined by the fact that a re-petitioning ban has been in place since the 1994 amendments without any Congressional intervention. *See* 25 C.F.R. § 83.3(f) (1994). Since the regulation comports with the agency's

authority, the Court must go on to consider whether it is supported by the record,[5] and this is where the Department fell short.[6]

## II. The Final Rule banning re-petition was arbitrary and capricious.

In conducting arbitrary and capricious review of a challenged action, the court is obliged to defer to the agency. *See Nat'l Ass'n of Clean Air Agencies v. EPA*, 489 F.3d 1221, 1228 (D.C. Cir. 2007). As the D.C. Circuit has explained, agency action will be upheld if the agency "has considered the relevant factors and articulated a 'rational connection between the facts found and the choice made.'" *Id*., quoting *Allied Local & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 68 (D.C. Cir. 2000). The review is "[h]ighly deferential" and "presumes the validity of agency action." *Id*., citing *AT&T Corp. v. FCC*, 349 F.3d 692, 698 (D.C. Cir. 2003).

This is not to say, however, that courts are expected to rubber stamp agency decisions. *Natural Res. Def. Council, Inc.*, v. *Daley*, 209 F.3d 747, 755 (D.C. Cir. 2000). Courts need not

---

[5] The Court does not need to analyze the other statutes plaintiff points to throughout Title 25 of the United States Code, because they are not the basis for defendants' statutory authority for promulgating the specific regulation being challenged in this case, and the statutes are only applicable to federally recognized Tribes. For example, Plaintiff argues that, "[c]ongressional policy intended to benefit and protect Indians is not limited to federally recognized Tribes," and it cites to the Indian Self-Determination and Education Assistance Act of 1975 ("ISDEAA") in support of its position. Pl.'s Reply at 15. However, the ISDEAA only defines "Indian" for the purposes of the statute as "a person who is a member of an Indian Tribe" and defining an "Indian Tribe" as any "Indian Tribe, band, nation, or other organized group or community . . . which is recognized as eligible for the special programs and services provided by the United States to Indians because of their status as Indians." 25 U.S.C. § 5304(e).

The Court is also not called upon to decide whether the challenged regulation is beneficial or harmful to Indian groups, but instead whether the agency provided any reasonable interpretation of its implicit authority to promulgate the regulation under the enabling statutes. Since the agency agency's interpretation is reasonable, the Court finds that defendants did not act in excess of their statutory authority.

[6] The *Chinook Indian Nation* court reached the same conclusion, holding that "[i]f section 2 and 9 empower DOI to regulate the recognition process . . . it follows that DOI may also place limitations on that process. A contrary conclusion would have no rational endpoint and tie DOI's hands when regulating federal recognition." 2020 WL 128563, at *6.

defer to "conclusory or unsupported suppositions." *United Techs. Corp. v. U.S. Dep't of Def.*, 601 F.3d 557, 562 (D.C. Cir. 2010), quoting *McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1187 (D.C. Cir. 2004). The Court's job is "to evaluate the rationality of [the agency's] decision." *Mississippi v. EPA*, 744 F.3d 1334, 1348 (D.C. Cir. 2013). It must be satisfied that the agency has examined the relevant data and articulated a satisfactory explanation for its action, "including a 'rational connection between the facts found and the choice made.'" *Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006), quoting *State Farm*, 463 U.S. at 43. *Post hoc* rationalizations for agency action may not be accepted by the Court. *State Farm*, 463 U.S. at 50; *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962). Thus, when an agency "'has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.'" *City of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999), quoting *Bellsouth Corp. v. FCC*, 162 F.3d 1215, 1222 (D.C. Cir. 1999).

### A.   History of the Final Rule

#### 1.   The Proposed Rule

On May 29, 2014, the BIA published a public notice of a proposed rule to revise the regulations governing the federal recognition of Indian Tribes under 25 C.F.R. § 83, based on its acknowledgment that the process was widely "criticized as 'broken.'" Fed. Acknowledgment of Am. Indian Tribes, 79 Fed. Reg. 30766 (proposed May 29, 2014) ("Proposed Rule"). The agency summarized the purpose of the Proposed Rule as follows:

> The revisions seek to make the process and criteria more transparent, promote consistent implementation, and increase timeliness and efficiency, while maintaining the integrity of the process. The current process has been criticized as "broken" or in need of reform. Specifically, the process has been criticized as too slow (a petition can take decades to be decided), expensive, burdensome, inefficient, intrusive, less than transparent and unpredictable.

The proposed rule would reform the process by, among other things, institutionalizing a phased review that allows for faster decisions; reducing the documentary burden; allowing for a hearing on the proposed finding to promote transparency and process integrity; establishing the Assistant Secretary's final determination as final for the Department to promote efficiency; and establishing objective standards, where appropriate, to ensure transparency and predictability.

*Id.*

One of the provisions in the proposal would have allowed Tribes that had been previously denied recognition to re-petition the agency for recognition under limited circumstances. *Id.* Since 1994, groups that were denied federal acknowledgment under the regulations were prohibited from repetitioning. Procedures for Establishing That an Indian Group Exists as an Indian Tribe, 59 Fed. Reg. at 9285 (Feb. 25, 1994). The Proposed Rule "would allow, in very limited circumstances, a petitioner previously denied under the regulations to re-petition under the revised rules." 79 Fed. Reg. 30767. As the agency explained:

> If a third party individual or entity has participated in an [Interior Board of Indian Appeals] or Secretarial reconsideration or an Administrative Procedure Act appeal in Federal court and ultimately prevailed, the denied petitioner may seek to re-petition only with the consent of the individual or organization. If the individual or organization consents, or a third party did not participate in a reconsideration or appeal, an OHA judge will determine whether the changes to the regulations warrant a reconsideration of that particular final determination or whether the wrong standard of proof was applied to the final determination. This determination will be made based on whether the petitioner proves, by a preponderance of the evidence, that re-petitioning is appropriate. Because the changes to the regulations are generally intended to provide uniformity based on previous decisions, re-petitioning would be appropriate only in those limited circumstances where changes to the regulations would likely change the previous final determination.

79 Fed. Reg. at 30766. The agency went on:

> Having an OHA judge review re-petitioning requests promotes consistency, integrity, and transparency in resolving re-petition requests. Requiring third-party consent recognizes the equitable interests of third parties that expended sometimes significant resources to participate in the adjudication and have since developed reliance interests in the outcome of

such adjudication. Having weighed these equity considerations, the Department has determined that the proposed rule must acknowledge these third-party interests in adjudicated decisions.

*Id.*

Applying these principles, the Proposed Rule read as follows:

(1) A petitioner may re-petition only if:

(i) Any third parties that participated as a party in an administrative reconsideration or Federal Court appeal concerning the petitioner has consented in writing to the re-petitioning; and

(ii) The petitioner proves, by a preponderance of the evidence, that either:

(A) A change from the previous version of the regulations to the current version of the regulations warrants reconsideration of the final determination; or

(B) The ''reasonable likelihood'' standard was misapplied in the final determination.

79 Fed. Reg. at 30774.

The Proposed Rule required that the request to re-petition be presented to the Office of Hearings and Appeals. The OHA judge could request evidence and hold hearings and his or her decision whether to allow re-petitioning would be a final action of the Department under the Administrative Procedure Act, 5 U.S.C. § 704. *See Id.*

In sum, under the Proposed Rule, a petitioner would need the consent of any third party that participated in the reconsideration or appeal of the prior decision, and it would need to show "by a preponderance of the evidence, that either: (1) changes to the regulations warrant a reconsideration of the final determination; or (2) the wrong standard of proof was applied to the final determination." Department of Interior, Comparison Chart: Current Federal Acknowledgment Rule vs. Proposed Federal Acknowledgment Rule, May 22, 2014, JA593 at

AR0005593.[7] The agency believed this "approach promot[ed] consistency and transparency in resolving re-petition requests and recognizes third-party interests in adjudicated decisions." *Id*.

It was understood that the Proposed Rule entailed some significant changes. On the day the agency issued its notice of proposed rulemaking, it circulated a news release with the headline, "Interior Proposes Reform of Federal Acknowledgment Regulations: Proposed rule would address 'broken' process." JA587–88 at AR0005528–29. The agency stated, "[w]hile the 1978 regulations established a structured process for federal acknowledgment, these regulations have been widely criticized as being too time-consuming, sometimes arbitrary and generally "'broken.'" JA587 at AR0005528. It noted that of the 566 federally recognized Tribes, only seventeen had have been recognized through the Part 83 process; "far more Tribes have been through Congressional action." JA588 at AR0005529. Then-assistant Secretary Washburn acknowledged, "[r]eform of the process is long-overdue." JA587 at AR0005528.

The press releases went on to summarize the objectives of the Proposed Rule:

> Key features of the proposed rule would promote transparency by updating the Part 83 criteria to include objective standards; promote efficiency by requiring a petitioner to show community and political influence/authority from 1934 to the present rather than from as early as 1789; and eliminate the need for a petitioner to demonstrate that third parties identified the petitioner as a Tribe from 1900 to the present. The propose rule would make changes to the petitioning process that facilitate the timely issuance of proposed finding and final determinations. It would also allow an administrative judge to conduct a comprehensive hearing and review of a negative proposed finding.

JA588 at AR0005529.

## 2. Comments on the Proposed Rule

After the Proposed Rule was published on May 29, 2014, *see* 79 Fed. Reg. 30766, the Department received comments. The two-month comment period was scheduled to conclude on

---

[7] Citations to the Administrative Record will refer to the documents in the Joint Appendix ("JA") and the Bates numbers appearing in the bottom right of each page, beginning with "AR."

August 1, 2014, 80 Fed. Reg. 37864, but the Department extended the period until September 30, 2014 in response to requests. *Id*. During that time, the Department received more than 330 written submissions and it held public meetings with federally recognized Indian Tribes around the country. *Id*.

Some of the comments "suggested different approaches to re-petitioning, allowing re-petitioning in only certain circumstances," including, if "[a] substantial number of years passes and there is significant new evidence; there is a showing of some modification of evidence . . . the petitioner exhausted their administrative and appellate remedies; or third parties involved in a prior proceeding are granted special standing." 80 Fed. Reg. 37875.

One comment, issued by "professors and scholars of American Indian law and policy," noted that although some administrative decisions are given preclusive effect similar to the common law doctrines of collateral estoppel and res judicata, "preclusion should not be granted because it would frustrate federal purposes in having a just and rational acknowledgment process and because the revised standards are significantly different." Letter from Professors and Scholars of American Indian Law, September 30, 2014, JA303 at AR0001894.

Several Tribes commented in support of the Proposed Rule because the changes would provide greater clarity, flexibility, and better reflect the realities of tribal existence. *See, e.g.*, Letter from Chief Brian Buchanan, Miami Nation of Indians, September 30, 2014, JA 311–16 at AR0002964–69 ("Miami Nation Letter"); Letter from the Duwamish Tribe of Seattle, Washington, September 25, 2014, JA317–20 at AR0002995–98 ("Duwamish Tribe Letter"). Those Tribes and others, as well as additional commenters applauded the idea of a re-petitioning opportunity but opposed the suggested requirement of third-party participation. *See, e.g.*, Miami Tribe Letter, JA314 at AR0002967; Duwamish Tribe Letter, JA318–19 at AR0002996; Steven

L. Austin, Ph.D, Comments on the 2014 Proposed Rule for Title 25 Code of Federal Regulations Part 83, JA274–78 at AR0001858–62.  The Duwamish Tribe, wrote, for example, that the new provision allowing for some re-petitioning "makes good sense because – as the revised regulations anticipate – some Tribes that were previously denied recognition might now qualify."  Duwamish Tribe Letter, JA318 at AR0002996; *see also*, Letter from Professors and Scholars of American Indian Law and Policy, September 30, 2014, JA 302–05 at AR0001893–96; Comments on the Proposed Hearing and Re-Petitioning Authorization Process Concerning Acknowledgment of American Indian Tribes from the Indian Legal Clinic at Arizona State University, September 30, 2014, JA006–07 at AR0000008–09.

### 3.    The Final Rule

On July 1, 2015, the agency published its Final Rule, declining to adopt the provision it had originally proposed.  *See generally* 80 Fed. Reg. 37862–95.  The agency's entire explanation for excluding the re-petitioning provision was set forth in a single paragraph:

> The proposed rule would have provided for a limited opportunity for re-petitioning.  After reviewing the comments both in support of and in opposition to allowing for any opportunity for re-petitioning, limiting re-petitioning by providing for third-party input, and other suggested approaches for re-petitioning, the Department has determined that allowing re-petitioning is not appropriate.  The final rule promotes consistency, expressly providing that evidence or methodology that was sufficient to satisfy any particular criterion in a previous positive decision on that criterion will be sufficient to satisfy the criterion for a present petitioner.  The Department has petitions pending that have never been reviewed.  Allowing for re-petitioning by denied petitioners would be unfair to petitioners who have not yet had a review, and would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated with re-petitions on the Department, and OFA in particular.  The Part 83 process is not currently an avenue for re-petitioning.

80 Fed Reg. at 37875.  Like the court in *Chinook Indian Nation*, 2020 WL 128563, at *8, this Court finds that this is not an explanation that justifies the choice the agency made.

## B. The ban on re-petitioning is arbitrary and capricious.

### 1. The record does not support the agency's goal of promoting consistency.

The agency asserted first that eliminating the proposed re-petitioning provision was in accordance with the stated purposes of the Final Rule: to "promote[] consistency," and it pointed out that the Rule expressly provided that "evidence or methodology that was sufficient to satisfy any particular criterion in a previous positive decision on that criterion would be sufficient to satisfy the criterion for a present petitioner." 80 Fed. Reg. at 37875. Defendants maintain in their summary judgment pleadings that the Final Rule serves this goal "because the 2015 Final Rule did not substantially change the standards for acknowledgment;" its aim was to "provide for consistent results between petitions," Defs.' Cross-Mem. at 20–21, and "mak[e] any re-petition inherently unnecessary." *Id*.

But this justification is inadequate for several reasons. First of all, the notion that evidence that was sufficient for a tribe that was *granted* recognition in the past will still be sufficient under the new regime does not have anything to do with whether the Department should reconsider a tribe that was *denied* recognition in the past. This is particularly true because the reason the agency proposed the Final Rule was because the old system was, as the agency admitted, "broken" and, contrary to defendants' assertions, the changes it implemented were significant.

The agency's insistence that the Final Rule ushered in no substantive changes is belied by its own description of the amendments it implemented. The Rule itself states: "The rule does not substantively change the Part 83 criteria, *except in two instances*." 80 Fed. Reg. 37863 (emphasis added). These changes include: 1) allowing the agency to "accept any and all evidence" of the petitioner's identification as an Indian entity, including allowing a petitioning

Tribe to use its own contemporaneous records to prove its existence as an Indian entity since 1900, and 2) expanding the definition for what counts as a Tribal marriage (to include non-petitioner marriages) for purposes of meeting the "community" criteria. 80 Fed. Reg. at 37863. These are not minor changes.

Indeed, the reforms were so substantial that the agency issued policy guidance on the same day the Final Rule was adopted, declaring the Part 83 process to be the sole means of granting tribal recognition, and discontinuing the use of other administrative processes.

> Having worked hard to make the Part 83 process more transparent, timely and efficient, while maintaining Part 83's fairness, rigor, and integrity, the Department has decided that, in light of these reforms to improve the Part 83 process, that process should be the only method utilized by the Department to acknowledge an Indian Tribe in the contiguous 48 states.

80 Fed. Reg. at 37539.

The agency reasoned:

> Of course, the basis for the policy shift being announced today is the Department's reform and improvement of the Part 83 process. The recently revised Part 83 regulations promote fairness, integrity, efficiency and flexibility. No group should be denied access to other mechanisms if the only administrative avenue available to them is widely considered "broken." Thus, this policy guidance is contingent on the Department's ability to implement Part 83, as reformed.

*Id.* The Department did not equivocate when it reiterated that the purpose of the reforms was to address the "broken" nature of the pre-2015 process – the process under which plaintiff was denied recognition. One cannot square the promise that "[n]o group should be denied access to other mechanisms if the only administrative avenue available to them is widely considered 'broken'" with depriving Tribes that were denied recognition under the old system of any opportunity to re-petition and to seek to satisfy the new criterion. Indeed, one cannot reconcile

the agency's repetition of the word "reform" with the agency's breezy assurance in the pleadings in this case that nothing has changed.[8]

Finally, as plaintiff points out, the Department's explanation "only accounts for a situation where a previously-denied petitioner applies again with the *same* evidence." Pl.'s Reply at 26 (emphasis in original). The explanation also failed to acknowledge that the Department implemented a new "consistent baseline approach," through which an applicant can reference a previous petitioner's success at satisfying a criterion as a baseline for the new applicant's attempt to meet the criterion with similar evidence. Pl.'s Reply at 27. Since the baseline approach was incorporated specifically because previously-denied petitioners were treated inconsistently before 2015, plaintiff persuasively contends that the only way for previously-denied petitioners to get "fair" and "consistent" results would be by allowing them to re-petition. Pl.'s Reply at 28–30.

For all of these reasons, the Court finds, and it agrees completely with the conclusion of the district judge in *Chinook Indian Nation*, that the decision to eliminate any right to re-petition will frustrate, and not advance, the stated goal of achieving consistency, and therefore, the choice reflected in the Final Rule is not rationally connected to the reasons proffered by the agency. *See* 2020 WL 128563, at *8 ("As the Proposed Rule recognized, banning re-petitions undermines the goal of applying DOI's standards consistently to all petitioners.").

### 2. The Rule's ban on re-petitioning is not rationally related to the agency's goal of promoting fairness.

The Department's second justification for eliminating the proposed re-petitioning provision from the 2015 Final Rule was that "[a]llowing for re-petitioning by denied petitioners

---

8    Merriam-Webster defines "reform" as: "1) amendment of what is defective, vicious, corrupt, or depraved; 2) removal or correction of errors of an abuse or wrong." *Reform*, Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/reform.

would be unfair to petitioners who have not yet had a review."  80 Fed. Reg. at 37875.

Defendants repeat this conclusory assertion, with more force, in their brief:

> A major impetus for the 2015 Final Rule was reducing the length of time between filing a petition and reaching a decision. Without question, adding re-petitioners to the waiting list would increase the time for new petitions to be heard, defeating one of the aims of the 2015 Final Rule. The Department thus reasonably decided not to change the re-petitioning ban from the 1994 regulations.

Defs.' Cross-Mem. at 20.

But the record is devoid of any evidence to support the Department's rationale.  It does not provide statistics to show how many new petitions remain outstanding,[9] how many Tribes would be able to re-apply under the limited proposed exception, or why one should assume that first-time petitioners would be pushed to the back of the line behind re-petitioners.  Plaintiff correctly notes in its reply that merely adopting a rule permitting re-petitioning does not dictate the order in which petitions would be reviewed, Pl.'s Reply at 21, and there is no evidence in the record suggesting that any pending petition would be adversely affected by a re-petition.  And defendants' *post hoc* rationalization that re-petitioning would increase the wait time for new petitions to be heard was not mentioned in the record and cannot be relied on now.  *State Farm*, 463 U.S. at 50; *Burlington Truck Lines*, 371 U.S. at 168.  Moreover, as the district court judge in *Chinook Indian Nation* stated, "[i]f DOI was concerned about pending petitions, it would have been simple to give them priority."  2020 WL 128563 at *9.

Because it is a "fundamental requirement of administrative law . . . that an agency 'set forth its reasons' for [a] decision," *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C.

---

9       According to plaintiff, "only three petitions are currently pending and seven groups will 'become petitioners when they supplement their petitions.'"  Pl.'s Reply at 22, quoting Office of Fed. Acknowledgment, *Petitions in Process*, https://www.bia.gov/as-ia/ofa/petitions-process.

Cir. 2001), the Department's reliance on an unsupported rationale that permitting re-petitioning would be unfair to new petitioners fails to meet this requirement.

### 3. The record does not support the Department's statement that permitting re-petitioning would overburden the Department, and the Office of Federal Acknowledgment in particular.

The agency's final explanation for its decision to exclude the re-petitioning provision from the 2015 Final Rule is that allowing re-petitioning "would hinder the goals of increasing efficiency and timeliness by imposing the additional workload associated with the re-petitions on the Department, and [the Office of Federal Acknowledgment ("OFA")] in particular." 80 Fed. Reg. at 37875.

The Court finds again that there is nothing in the administrative record to support this rationale. There is no statistical information in the administrative record concerning the number of Tribes that have been previously denied that are likely to re-petition or what percentage of the anticipated caseload that would turn out to be. Nor is there any estimate of how long a re-petition decision would take given the Proposed Rule's requirement that re-petitioners would only be able to submit new materials to the agency. *See* 79 Fed. Reg. at 30774.

Second, the Final Rule's claimed concern about increasing the burdens on OFA makes little sense since the Proposed Rule assigned the Office of Hearings and Appeals – and not OFA – the responsibility to hold hearings, receive pleadings, request evidence, and make determinations concerning re-petitioning. 79 Fed. Reg. at 30774. *See Chinook Indian Nation*, 2020 WL 128563, at *9.

In their summary judgment pleadings, defendants argue that the Department's concern was not only with its own workload, but "also with that of petitioning groups." Defs.' Cross-Reply at 12. They point the Court to the portion of the Final Rule "estimating that the 'annual burden hours' for entities petitioning for federal acknowledgment will decrease by a minimum of

approximately 6,390 hours under the 2015 regulations." Defs.' Cross-Reply at 12, quoting 80 Fed. Reg. 37886. They conclude that "[i]n order to effectuate the goals of increasing efficiency, reducing burdens, and streamlining the Part 83 process for both petitioners and the Department alike, the Department reasonably determined that in light of the myriad of existing procedural and appellate safeguards for petitioners, re-petitioning should continue to be prohibited." Defs.' Cross-Reply at 13.

But the Department's condescending suggestion that it is eliminating any right to re-petition to reduce the burden on *petitioners* does not merit serious consideration, and it appears to be made out of whole cloth since the agency did not advance that justification in the Final Rule.

In sum, the Court finds that the Department's ban on re-petitioning in the updated Part 83 regulation is neither well-reasoned nor rationally connected to the facts in the record. For that reason, the ban will be vacated as arbitrary and capricious and the matter will be remanded to the Department of the Interior. Because the Court will grant summary judgment for plaintiff under the APA and remand the challenged rule to the agency for further consideration, it need not reach the constitutional arguments. *See U.S. v. Wells Fargo Bank*, 485 U.S. 351, 354 (1998) (directing that a court shall "resolve statutory questions at the outset where to do so might obviate the need to consider a constitutional issue"); *Burton v. United States*, 196 U.S. 283, 295 (1905) ("It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case."); *Heller v. Dist. of Columbia*, 670 F.3d 1244, 1250 (D.C. Cir. 2011).

## CONCLUSION

For the foregoing reasons, plaintiff's motion is GRANTED with respect to Count IV and defendants' motion is DENIED with respect to that Count. The Court declines to reach a determination of plaintiff's constitutional claims at this time. The re-petitioning ban is remanded to the agency for further consideration or action in accordance with this order.

**SO ORDERED**.


AMY BERMAN JACKSON
United States District Judge

DATE: March 25, 2020